UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMUEL H. BLACK and BERNARD BLACK,

                Plaintiffs,

-against-

CHERIE WRIGLEY, ESAUN G. PINTO, SR.,
and CPI INVESTIGATIONS,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-430 (CBA) (ST)

**AMON, United States District Judge:**

This case arises out of a dispute concerning the expenditure of Joanne Black's ("Joanne") assets. The Denver Probate Court appointed Bernard Black ("Bernard"), Joanne's brother, to serve as Joanne's conservator and in his capacity as conservator, he transferred Joanne's assets into a Supplemental Needs Trust ("SNT"). Bernard and his brother Samuel H. Black ("Samuel") serve as co-trustees of the SNT and bring this suit in their capacity as trustees. (D.E. # 1 ("Compl.") ¶¶ 29–36.) They allege that defendants Cherie Wrigley ("Wrigley"), Esaun G. Pinto, Sr. ("Pinto"), and CPI Investigations ("CPI") engaged in a systematic effort to siphon away Joanne's assets for their own personal use. Defendants have moved to dismiss the plaintiffs' complaint, arguing that the Court lacks jurisdiction and that plaintiffs' claims are barred by <u>res judicata</u> and collateral estoppel. For the reasons set forth below, the Court denies defendants' motion to dismiss.

## BACKGROUND

### I.    Renata Black's Will and Estate

Renata Black ("Renata"), Joanne and Bernard's mother, established two trusts in 1997: (1) the SNT, and (2) the Irrevocable Trust for the Benefit of the Issue of Renata Black (the "Issue Trust"). (D.E. # 55-1 ("Black Decl.") ¶¶ 3–4.) Renata's will provides that upon her death, two-thirds of her residual estate would go to the SNT and one-third would go to the Issue Trust. (<u>Id.</u>

1

¶ 5; see also D.E. # 55-3.) The will named Bernard as the executor of her estate. (D.E. # 55-3 at 2.) The SNT trust instrument named Renata and Anthony Dain ("Dain"), Renata's nephew and Bernard's cousin, as co-trustees, with Bernard to serve as a successor co-trustee in the event that Renata was unable to serve. (D.E. # 55-2 at 7.)

Renata died in May 2012, (Compl. ¶ 53), and her will was admitted to probate in the New York Surrogate Court for Westchester County, (id. ¶ 72). Shortly after her death, it came to light that Renata had changed the payable-on-death ("POD") designations for her principal assets, which were held in an account at Vanguard, to make Joanne the direct recipient of 95% of those assets. (Black Decl. ¶ 6.) As a result of the POD designation, Joanne would receive 95% of Renata's assets directly rather than in trust. (Id.) According to Bernard, it had been Renata's "long-held plan for the assets [in her Vanguard account] to go into the SNT and the Issue Trusts." (Id. ¶ 7.)

## II. Bernard Black's Appointment as Conservator for Joanne Black and the Disclaimer

Throughout her life, Joanne has suffered from severe mental illness, including schizoaffective disorder and delusions. (Id.) Upon Renata's death and the discovery of the POD designation, Bernard "worried that if [Joanne] received that much cash she would either squander it, or attempt to follow through on threats" she had been making against members of the Black family. (Black Decl. ¶ 13.) Members of the Black family told Bernard they intended to sue to invalidate the POD designation, but Bernard believed that such litigation would cause negative consequences for Joanne. (Id.) Instead, Bernard applied to become Joanne's conservator in Colorado, where she was living at the time, so that he could disclaim the POD designation and obtain her workers' compensation benefits and put them in trust. (Id. ¶ 15.) In December 2012, the Colorado court appointed Bernard as Joanne's conservator. (See D.E. # 55-7 ¶ 2.) On March

2

3, 2013, the Denver Probate Court issued an "Amended Order Appointing Conservator for Adult" allowing Bernard unrestricted powers and duties as conservator and provided that Joanne's assets were to be placed into the SNT for Joanne's benefit. (See id. ¶ 3.) The Amended Order further authorized Bernard to disclaim Joanne's interest as beneficiary under all of Renata's POD accounts. (Id. ¶ 4.) Bernard subsequently disclaimed Joanne's interest as a beneficiary of Renata's POD Vanguard account (the "Disclaimer"), and then transferred the assets from this account to Renata's probate estate. (Id. ¶ 6.) Pursuant to the terms of Renata's will, one-third of the disclaimed assets were allocated to the Issue Trust and the remaining two-thirds were allocated to the SNT. (Id.)

### III. Subsequent Proceedings in the Denver Probate Court

Plaintiffs' claims in the instant case are related to litigation proceeding in the Denver Probate Court concerning Joanne's conservatorship estate. This section summarizes the relevant proceedings. The Court has taken judicial notice of public records filed in connection with these proceedings. See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

On February 6, 2015, Joanne, through her court-appointed counsel, filed a motion in the Denver Probate Court to void the Disclaimer. (See D.E. # 55-7.) The motion states:

> While it is true the Amended Order of Conservatorship dated March, 2013 allowed Mr. Black to disclaim Ms. Black's interest in the Vanguard and Fidelity accounts, Mr. Black never disclosed to this Court the effect the disclaimer had on Ms. Black's ownership of the $3.5 million assets. This divestiture was antithetical to the terms and intent of Renata Black. All of this money was meant for Ms. Black's care and benefit. Not only did Mr. Black fail to seek approval from the Court regarding the disclaimer, he failed to disclose the effects the disclaimer had to Ms. Black, and has failed to fully account for the status of

3

the assets. This is a breach of Mr. Black's fiduciary duty as Ms. Black's Conservator as it amounts to a failure to preserve and maintain her assets for her sole benefit.

(Id. ¶ 7.)

On April 2, 2015, the Denver Probate Court held a status conference and found that an evidentiary hearing was required to determine whether the Disclaimer "should have acted to divest Ms. Black of 1/3 of these non-probate assets" and whether "it was properly disclosed that Mr. Black intended or had authority to redirect one-third of these non-probate assets, left in their entirety to Ms. Black, to persons other than Ms. Black." (D.E. # 47-5 ¶ 13.) At the status conference, the parties also stipulated to have a forensic accounting of the conservatorship estate performed; the accounting would include "the affected trusts, the disclaimer of Fidelity and Vanguard accounts, POD benefits for all accounts which disclaimers were used to transfer funds into the Renata Black Estate, the Roth IRA, all amounts paid to attorneys and accounts—in short a complete review of all funds and assets related to Joanne Black both before and after the disclaimer . . . ." (Id. at 1.) Furthermore, the court ordered Pinto to "provide a complete accounting with documentation of all funds that were held under his control" to the special conservator and Joanne Black's court-appointed counsel. (Id. ¶ 8.) With regard to Wrigley, the court noted that Wrigley "asserts she has been paying for [Joanne] Black's living expenses and needs from her own, personal funds, has provided documentation to [Bernard] Black but has not received any reimbursement." (Id. ¶ 12.) The court directed Wrigley to "provide an itemization of all amounts paid by her with copies of receipts, statements and the like to support those expenses" to the special conservator for review and to provide copies to all counsel; "[o]bjections shall be brought to [the special conservator's] attention, who shall determine whether the expenses or any one of them should be reimbursed." (Id.) Finally, the Denver Probate Court suspended Bernard's authority to

act as conservator and appointed a special conservator to act in the interim until a permanent conservator or guardian was appointed by a New York court. (Id.)

On September 28, 2015, following an evidentiary hearing, the Denver Probate Court entered an order finding that Bernard breached his fiduciary duties and removing him as conservator. (D.E. # 47-1 at 1, 8–9.) The court revoked Bernard's letters and recommended that he not be appointed as a fiduciary in any capacity as to Joanne. (Id. at 1.) On March 17, 2016, the Denver Probate Court issued an order addressing motions related to attorneys' fees and costs. After reviewing the billing statements submitted by Wrigley, the court found that Wrigley had "expended certain of her own, personal funds for Joanne Black's living expenses and personal needs." (D.E. # 47-3 at 7.) The court further found:

> At [the evidentiary] hearing the Court was advised that the parties had agreed Ms. Wrigley expended $50,619.93 and by stipulation entered July 29, 2015 the sum of $31,726.79 had been authorized for payment to her from the conservatorship estate, leaving $18,893.14 in dispute. The Court finds, based on the evidence and the parties' representations, that Ms. Wrigley expended those funds because the monies provided to Joanne Black from Bernard Black were insufficient to pay for all of her reasonable needs, to include rent, furnishings, clothing, food, toiletries, personal expenses ($18,303.71) and travel expenses ($589.43) for Ms. Wrigley to attend a court appearance in Denver. Although disputed by [Bernard] Black, all of the evidence before this Court indicates that Cherie Wrigley has stood by her cousin during very difficult times.

(Id. at 7–8.) The Denver Probate Court ordered that Wrigley be paid $18,893.14 from Joanne Black's conservatorship estate or the SNT. (Id. at 10.)

On June 23, 2017, the Denver Probate Court granted Dain's Second Motion for Accounting for Approval of Further Fees and Costs and directed the parties to enter mediation. (D.E. # 63.) In granting that motion, the Denver Probate Court noted that Bernard's challenges to the jurisdiction of that court over the SNT "are currently before the Court of Appeals." (Id. at 3.)

## IV. Plaintiffs' Claims

Plaintiffs allege that Wrigley "engaged in a systematic effort to siphon away as much of Joanne's net worth as she [could] for herself and her associates." (Compl. ¶ 2.) According to plaintiffs, Wrigley, Pinto, and Pinto's employer, CPI "have conspired to engage in multiple violations of civil and criminal law, including fraud, unjust enrichment, conversion, fraudulent concealment, money had and received, constructive fraud, negligent hiring and/or retention, negligent misrepresentation, and aiding and abetting, as part of their overall scheme to obtain and spend Joanne's property." (Id.) In particular, plaintiffs allege that Pinto obtained debit cards for Joanne's bank accounts and used them to steal money from her accounts and diverted her Social Security Disability Insurance ("SSDI") payments to himself. (See, e.g., id. ¶ 16.) Plaintiffs further claim that Pinto submitted inflated and false invoices for expenses and services and received payment for these invoices from Renata's estate that otherwise would have gone to the SNT. (See, e.g., id. ¶¶ 16–17.) Finally, plaintiffs allege that Wrigley has paid some of Pinto's bills and has herself been reimbursed for false and exaggerated bills with funds from Renata's estate that otherwise would have gone to the SNT. (See, e.g., id. ¶¶ 19–20.)

The complaint brings claims against all defendants for: fraud (Compl. ¶¶ 594–603); fraud by omission, (id. ¶¶ 604–17); fraudulent misrepresentation, (id. ¶¶ 618–24); unjust enrichment, (id. ¶¶ 625–35); money had and received, (id. ¶¶ 644–47, 661–74); conversion, (id. ¶¶ 675–88); constructive fraud, (id. ¶¶ 689–96); and negligent misrepresentation, (id. ¶¶ 697–702). In addition, the complaint includes claims for unjust enrichment against Pinto and Wrigley, (id. ¶¶ 636–43, 655–60), and aiding and abetting against Wrigley, (id. ¶¶ 703–07). Plaintiffs seek to recover damages in the amount of the false or inflated invoice amounts that were paid to Wrigley, Pinto, and CPI using funds from Renata's estate or the SNT. Plaintiffs further allege that Pinto stole

6

Joanne's SSDI payments and funds from her bank accounts, which resulted in double payment because his invoices included services and expenses for which he had already been compensated by his undisclosed retention of these funds. Plaintiffs seek to recover damages in the amount of the bank account withdrawals and SSDI benefits that were not credited on Pinto's invoices. (Id. ¶¶ 605–17, 619–24, 638–43, 649–54, 656–60.)

## DISCUSSION

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In reviewing a motion to dismiss, the Court should first address grounds that challenge its subject matter jurisdiction because absent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further. See Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). Here, federal jurisdiction is premised on 28 U.S.C. § 1332, the statute vesting in federal district courts diversity jurisdiction. (See Compl. ¶ 25.) Because the amount-in-controversy exceeds $75,000, (see, e.g., id. ¶ 58–59), and there is complete diversity among the parties,[1] the requirements for diversity jurisdiction are met. The defendants contend this Court nevertheless lacks jurisdiction over this action pursuant to the probate exception, the Rooker-Feldman doctrine, and the abstention doctrine.

#### A. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. In determining

---

[1] Plaintiff Samuel H. Black is a resident of Maryland, (Compl. ¶ 31), and plaintiff Bernard Black is a resident of Illinois, (id. ¶ 25), Wrigley is a resident of California, (id. ¶ 37), Pinto is a resident of New York, (id. ¶ 47), and CPI is incorporated and has its principal place of business in New York, (id. ¶ 60).

7

whether subject matter jurisdiction exists, the court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). When subject matter jurisdiction is challenged under Rule 12(b)(1), the Court may also consider evidence "presented by affidavit or otherwise." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

### B. The Probate Exception

The "probate exception" to federal diversity jurisdiction "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 296 (2006). However, "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id. In Marshall, the Supreme Court clarified the scope of the probate exception, holding it applies to claims that: (1) "involve the administration of an estate, the probate of a will, or any other purely probate matter," or (2) "seek to reach a res in the custody of a state court." Id. at 312 (internal quotations and citations omitted). Plaintiffs' claims in this case plainly do not involve purely probate matters because they do not involve the administration of an estate or the probate of a will.

The Court must therefore determine whether the resolution of plaintiffs' claims for damages would require it to "dispose of property that is in the custody of a state probate court." Id. The prohibition against "endeavoring to dispose of property that is in the custody of a state probate court" is "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Id. at 311 (internal citations omitted).

Plaintiffs allege that defendants made unauthorized withdrawals from Joanne's bank accounts and submitted false and inflated invoices, receiving payment for these invoices from Renata Black's estate that otherwise would have gone to the SNT. The relief plaintiffs seek is an in personam judgment against defendants. (Compl. at ¶¶ 70–71.) In the wake of Marshall, such claims are precisely the type of claim that courts have found to be outside the bounds of the probate exception. See Lefkowitz v. Bank of N.Y., 528 F.3d 102, 107–08 (2d Cir. 2007) (finding that claims of breach of fiduciary duty and fraudulent misrepresentation, which sought "damages from [d]efendants personally," did not ask the court to exercise control over a res under a probate court's jurisdiction); Lifschultz v. Lifschultz, No. 12-CV-1881 (ER), 2012 WL 2359888, at *5–6 (S.D.N.Y. June 20, 2012) (stating that claims seeking personal damages, unlike claims seeking distributions from estate funds under the control of a probate court, are not subject to the probate exception); Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 532 (S.D.N.Y. 2010) (same); see also Marshall, 547 U.S. at 312 (explaining that the probate exception can no longer be used to dismiss "widely recognized tort[s]" such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court). The parties continue to dispute whether the Denver Probate Court's exercise of jurisdiction over the SNT was proper. However, this Court need not resolve that issue. Even assuming arguendo that the Denver Probate Court properly exercised jurisdiction over the SNT, plaintiffs' in personam tort claims would nevertheless fall outside the probate exception under the line of cases discussed above.

Defendants further contend the instant case is "nearly identical" to Mercer v. Mercer, No. 13-CV-5686 (SJF), 2014 WL 3654667 (E.D.N.Y. May 22, 2014), report and recommend. adopted, 2014 WL 3655657 (E.D.N.Y. July 21, 2014), aff'd sub. nom., Mercer v. Bank of N.Y. Mellon, N.A., 609 F. App'x 677 (2d Cir. 2015). (Defs. Mem. at 13–15.) The court in Mercer found that

the probate exception applied because plaintiffs' claims centered on the alleged mismanagement of assets in the trusts and malfeasance by the fiduciaries—claims that the Surrogate's Court supervising the testamentary trusts was already considering. Id. at *7–8. In contrast, here, plaintiffs are not complaining about the mismanagement of assets or malfeasance by fiduciaries; rather, they contend that defendants defrauded Bernard and Samuel, who are themselves fiduciaries, by seeking reimbursement for false and inflated invoices. The instant case is more closely analogous to Lefkowitz, 528 F.3d 102, in which a beneficiary of an estate alleged that the executor of the estate improperly paid inflated and fraudulent legal bills, and brought tort claims against the bank, including fraudulent misrepresentation. The Second Circuit held that these tort claims did not fall under the probate exception because the plaintiff sought damages from the executor personally and resolution of her claims did not require the court to assert control over any res in the custody of a state court. Id. at 107–08. Similarly, here, plaintiffs seek in personam damages and to provide the relief sought, plaintiffs would not have to disgorge any property under the custody of a state court.

For these reasons, the Court finds that the probate exception does not apply.

### C. Rooker-Feldman Doctrine

Defendants next argue this Court lacks jurisdiction pursuant to the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs. L.L.C., 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). For the Rooker-Feldman doctrine to apply, (1) "the federal-court plaintiff must have lost in state

court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (alterations omitted).

The Court finds that the Rooker-Feldman doctrine does not apply here. Defendants emphasize that Bernard raised similar allegations of Wrigley's and Pinto's misconduct in the Denver Probate Court. (D.E. # 60 at 4–8.) However, the Second Circuit has made clear that the applicability of the Rooker-Feldman doctrine "turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." McKithen v. Brown, 481 F.3d 89, 97–98 (2d Cir. 2007). Here, although the Denver Probate Court issued an order finding that Wrigley was entitled to $18,893.14 from Joanne's conservatorship estate or the SNT as reimbursement for her living and personal expenses, (see D.E. # 47-3), plaintiffs have shown that the damages they seek in this action are distinct from the reimbursement ordered by the Denver Probate Court, (see D.E. # 59 at 4–6). Specifically, plaintiffs have submitted a chart describing the payments being challenged in this action, such as Joanne's Social Security Disability Insurance payments that were allegedly fraudulently diverted from the SNT to Pinto, as distinguished from the reimbursements to Wrigley for expenditures on behalf of Joanne that were approved of by the Denver Probate Court. (Id. at 5.) Furthermore, the Denver Probate Court did not issue any orders regarding Pinto or his spending. Indeed, the $18,893.14 awarded to Wrigley is irrelevant to the instant dispute as plaintiffs do not challenge those disbursements and "only named Wrigley as a defendant in this case because she is responsible for Pinto's actions. (Id. at 6.) The injuries for which plaintiffs seek relief in this action are thus separate from judgments entered by the Denver

Probate Court. Therefore, plaintiffs are not complaining of injuries caused by a state-court judgment and do not ask this Court to review any judgment of the Denver Probate Court, so the Rooker-Feldman doctrine does not apply. See, e.g., Exxon Mobil, 544 U.S. at 293 ("If a federal plaintiff 'present[s] some independent claim . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993))).

**D. Abstention**

Finally, defendants contend the Court should abstain from exercising jurisdiction over the instant action. Abstention is a judicially created doctrine borne of the notion that even where "a federal equity court does have jurisdiction of a particular proceeding," it may abstain from exercising that jurisdiction out of "proper regard for the rightful independence of state governments in carrying out their domestic policy." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724 (1996) (internal quotation marks omitted). Defendants rely on principles set forth by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), which allow a federal court to abstain from exercising jurisdiction over a case where there is a pending parallel state court proceeding and certain other factors weigh in favor of abstention. Abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 813. Indeed, in deciding whether to abstain, federal courts must remember their "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id. at 817. A federal district court should abstain from deciding a case correctly before it, therefore, only when doing so would "clearly serve an important countervailing interest." Id. at 813 (quoting Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)).

"The principles of Colorado River are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'" Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117–18 (2d Cir. 1998) (quoting Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 734 (9th Cir. 1991)). Put differently, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." Id. at 118. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997); see also Great S. Bay Med. Care, P.C. v. Allstate Ins. Co., 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002) ("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting Dittmer, 146 F.3d at 118)).

The Court concludes that the instant action is not parallel to any ongoing state proceeding. Defendants have not identified any ongoing state proceeding with identify of parties, issues, or relief sought. See, e.g., Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd., 17 F.3d 46, 50 (2d Cir. 1994) (holding that actions are not parallel and Colorado River abstention is not warranted where the two proceedings involve different parties, subject matters, and forms of relief). Although plaintiffs make the conclusory assertion that this action is parallel to proceedings before the Denver Probate Court and the Westchester County Surrogate's Court, those courts are not currently considering the allegations of fraud raised in plaintiffs' complaint in this action. The Court accordingly concludes that Colorado River abstention is not warranted in this case.

## II. Motion to Dismiss for Failure to State a Claim

### A. Standard of Review

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. In considering a motion to dismiss for failure to state a claim, the Court may take judicial notice of public records filed in connection with litigation in state courts, not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings. See Kramer, 937 F.2d at 774.

### B. Collateral Estoppel

Defendants first move to dismiss the amended complaint under collateral estoppel, or issue preclusion. Collateral estoppel does not go to the Court's jurisdiction, but rather whether the complaint states a claim upon which relief may be granted pursuant to Rule 12(b)(6). See Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86–87 (2d Cir. 2000). Under the doctrine of collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 n.6 (1982). Here, the defendants assert the Denver Probate Court has already decided the issues relevant to the instant action. Because "a federal court must apply the rules of collateral estoppel of the State in which the prior judgment was rendered," Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000), the Court will consider

Colorado law concerning collateral estoppel. Under Colorado law, collateral estoppel bars relitigation of an issue if: "(1) the issue is identical to that actually adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." S.O.V. v. People in Interest of M.C., 914 P.2d 355, 359 (Colo. 1996) (en banc).

Collateral estoppel does not bar the plaintiffs' claims in this action because the issues in this case are distinct from those litigated in the Denver Probate Court proceedings. Although the Denver Probate Court ordered that Wrigley be reimbursed for certain expenses—Joanne's Verizon bills, Joanne's dental bills, psychiatric social worker bills, certain cashier's checks and cash paid by Wrigley directly to Joanne, and Wrigley's travel expenses—plaintiffs challenge the propriety of other reimbursements paid to Pinto. (See D.E. # 59 at 4.) Furthermore, defendants have not provided any evidence that the Denver Probate Court considered the issues of inflated and false invoices and unauthorized bank account withdrawals that plaintiffs allege here. Defendants contend that "regardless of whether plaintiff Bernard Black presented each and every allegation of fraud to the [Denver Probate Court], he 'received a full and fair opportunity to litigate' the issue." (Defs. Mem. at 22) (internal citations omitted). However, collateral estoppel "applies only to issues actually litigated," S.O.V., 914 P.2d at 358–59. Because the issues in the instant action were not actually litigated before the Denver Probate Court, collateral estoppel does not apply.

### C. Res Judicata

The defendants also move to dismiss the amended complaint under the doctrine of res judicata. Res judicata challenges "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994).

When a defendant raises res judicata as a defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal under Rule 12(b)(6) is appropriate. Conopco, 231 F.3d at 86. "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered." O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009). Accordingly, "[f]ederal courts must use the res judicata doctrine of the state in which the state court judgment was granted." Fequiere v. Tribeca Lending, No. 14-CV-812 (RMF), 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016).

Because defendants argue that the Denver Probate Court's judgments preclude this action, Colorado law applies. Under Colorado law, res judicata "operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, identity of subject matter, claims for relief, and parties to the action." City & Cty. of Denver v. Block, 814 P.2d 824, 830 (Colo. 1991). For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo. 2005).

The Court finds that res judicata does not bar the plaintiffs' claims in the instant case for at least two reasons. First, defendants have failed to show that plaintiffs could have fully and fairly litigated the claims regarding Pinto's alleged improper expenditures before the Denver Probate Court. Res judicata is inapplicable where impediments to relief exist, such as limitations to the prior court's jurisdiction or ability to award the relief sought. See Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 847 F.3d 1221, 1245 (10th Cir. 2017) ("Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim to be precluded could

and should have been brought in the earlier litigation . . . . It follows from this principle that the preclusion doctrine will not later bar a claim [the previous court] did not have jurisdiction to hear."); Hernandez v. Woodard, 873 P.2d 20, 22 (Colo. App. 1993) (holding that where an "[i]mpediment to plaintiff's ability to obtain relief on his personal injury claim [existed] . . . the trial court should have applied an exception to the res judicata bar and permitted plaintiff to pursue his subsequent and timely action on the personal injury claim."). Here, defendants have not demonstrated that the Denver Probate Court had the requisite jurisdiction to award relief for the claims asserted in this action against Pinto. Indeed, even though the Denver Probate Court ordered Pinto to provide an accounting of all funds under his control, he refused to comply with that order and declined to submit any information to the forensic accountant. (See D.E. # 59 at 4.) Accordingly, defendants have failed to demonstrate that res judicata bars plaintiffs' claims because they have not shown that plaintiffs had a full opportunity to litigate the claims for improper expenditures alleged in this action in the Denver Probate Court.

Second, defendants' res judicata argument fails because the judgment they rely upon is not final. Bernard appealed the Denver Probate Court's September 28, 2015 order, the March 17, 2016 order, and other related orders, and it is evident from defendants' latest submission to this Court that Bernard's appeals are still pending. (D.E. # 63 ("Mr. Black's challenge to jurisdiction, as well as other matters, are currently pending before the Court of Appeals.").) As a result, the present action cannot be dismissed under res judicata because it is not settled whether the Denver Probate Court properly exercised jurisdiction over the SNT, let alone whether Bernard could challenge distributions from the SNT alleged in this proceeding. See Wyles v. Sussman, 661 F. App'x 548 (10th Cir. 2016) ("Under Colorado law, a pending appeal prevents preclusive effect of

a prior judgment."). Accordingly, because judgment is not final, plaintiffs' claims are not barred by res judicata.

## CONCLUSION

For these reasons, the Court denies defendants' motion to dismiss.

SO ORDERED.

Dated: September 30, 2017
      Brooklyn, New York

Carol Bagley Amon
United States District Judge