UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SAMUEL HOY BLACK and BERNARD BLACK,

                     Plaintiffs,                  16-CV-430 (CBA) (ST)

      -against-

CHERIE WRIGLEY, ESAUN G. PINTO, SR., and
CPI INVESTIGATIONS INC.

                 Defendants.

----------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

---

**Mancilla & Fantone, LLP**
*Attorneys for Defendants*
**260 Madison Avenue, 22nd Floor**
**New York, New York 10016**
**P (646) 225-6686**
**F (646) 655-0269**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................ ii

**TABLE OF AUTHORITIES** ................................................................................. iv

**PRELIMINARY STATEMENT** ...........................................................................1

**ARGUMENT** ............................................................................................................4

    **I.**     Defendants are Entitled to Summary Judgment on Plaintiffs First
        Cause of Action for Fraud (Invoices) .........................................................4

        **A.**     Expenses In The Amount of $21,748 ...............................................6

        **B.**     $81,400 In Unperformed Services By Falsely Claiming Pinto Was
                Visiting Joanne Three Times Per Week, And $21,048 In Unperformed
                Services By Billing For Five Hours For Each Visit To Joanne .......................7

        **C.**     $8,625 In Unperformed Services By Billing For 24 Hours Per Day For
                Pinto And A Driver During The Period From April 12-19, 2013 ....................8

    **II.**    Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause of
        Action For Fraud By Omission (Bank Accounts) ......................................11

    **III.**   Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause
        of Action For Fraudulent Misrepresentation (Invoices and Bank Accounts) ............13

    **IV.**   Defendants Are Entitled To Summary Judgment On Plaintiffs'
        Fourth Through Tenth Causes of Action For Unjust Enrichment
        and Money Had And Received ...................................................................13

        **A.**     Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth
                Cause of Action for Unjust Enrichment (Invoices) and Plaintiffs'
                Sixth Causes of Action for Money Hand And Received (Invoices) ..............15

        **B.**     Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth
                Cause of Action for Unjust Enrichment (Invoices) and Plaintiffs' Seventh
                Cause of Action for Money Had and Received (Bank Accounts) ..................17

        **C.**     Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth
                Cause of Action for Unjust Enrichment and Plaintiffs' Tenth Cause of
                Action for Money and Received (July and September 2014 Payments) ........18

**D.**   Defendants Are Entitled to Summary Judgment On Plaintiffs' Fifth Cause of Action for Unjust Enrichment (SSDI Benefits) and Plaintiffs' Eighth Cause of Action for Money Had and Received (SSDI Benefits).........20

**E.**   Defendants Are Entitled to Summary Judgment On Plaintiffs' Ninth Cause of Action for Money Had and Received (October 2014 Advance) ......21

**V.**   Defendants Are Entitled to Summary Judgment On Plaintiffs' Eleventh and Twelfth Causes of Action For Conversion....................................................24

**VI.**   Defendants Are Entitled To Summary Judgment On Plaintiffs' Thirteenth Cause of Action For Constructive Fraud........................................................27

**VII.**   Defendants Are Entitled To Summary Judgment On Plaintiffs' Fourteenth Cause of Action For Negligent Misrepresentation.........................................28

**VIII.**   Defendants Are Entitled To Summary Judgment On Plaintiffs' Aiding and Abetting And Vicarious Liability Claims Against Wrigley ..........................29

**A.**   Respondeat Superior .................................................................32

**B.**   Vicarious Liability ...................................................................33

**CONCLUSION** .......................................................................................34

# TABLE OF AUTHORITIES

## CASES

Aaron Ferer & Sons, Ltd. v Chase Manhattan Bank, N.A.,
  731 F.2d 112 (2d Cir. 1984) ................................................................................ 14

Abbott Labs. v. Adelphia Supply USA,
  No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4, 2017) ........... 14

Aioi Nissay Dowa Ins. Co. v. Prosight Specialty Mgmt. Co.,
  2013 U.S. Dist. LEXIS 87050 (S.D.N.Y. June 20, 2013) ......................................... 16

Belda v. Doerfler,
  2015 U.S. Dist. LEXIS 133483 (S.D.N.Y. September 30, 2015) ................................. 15

Childers v. N.Y. & Presbyterian Hosp.,
  36 F. Supp. 3d 292 (S.D.N.Y. 2014) ....................................................................... 28

Connell v. Hayden,
  83 A.D.2d 30 (N.Y. App. Div., 2d Dep't 1981) ......................................................... 32

Corsello v. Verizon New York, Inc.,
  18 N.Y.3d 777 (2012) ....................................................................................... 14

E*TRADE Fin. Corp. v. Deutsche Bank AG,
  631 F. Supp. 2d 313 (S.D.N.Y. 2009), aff'd, 374 F. App'x 119 (2d Cir. 2010) ...................... 27

Eiseman v. State,
  70 N.Y.2d 175 (1987) ....................................................................................... 28

Eklecco Newco, LLC v. Q of Palisades, LLC,
  93 A.D.3d 1233 (4th Dept 2012) ................................................................... 16, 20

Fernbach, LLC, v. Capital & Guar, Inc.,
  2009 U.S. Dist. LEXIS 71564 (S.D.N.Y. August 12, 2009) ..................................... 23

Fesseha v. TD Waterhouse Inv. Servs.,
  305 AD2d 268 (1st Dept 2003) ............................................................................ 25

Georgia Malone & Co. v. Rieder,
  19 N.Y.3d 511 (2012) ....................................................................................... 14

Goldfine v. Sichenzia,
  73 AD3d 854 (2d Dept 2010) .............................................................................. 14

Heinert v. Bank of Am. N.A.,
  No. 20-0691, 2020 U.S. App. LEXIS 35733 (2d Cir. Nov. 13, 2020) ......................... 30

Hotel Constructors, Inc. v. Seagrave Corp.,
  574 F. Supp. 384 (S.D.N.Y. 1983) .................................................................... 5, 8

In re Estate of Witbeck,
  245 A.D.2d 848 (3d Dept. 1997) .......................................................................... 15

In re Rockefeller Ctr. Props., B.R.
  804 SDNY Bankruptcy 1999  (October 8, 1999)................................................................ 17, 19
In re Sharp Int'l Corp.,
  403 F.3d 43 (2d Cir. 2005)........................................................................................... 30
JLC Penny Corp. v. Carousel Ctr. Co., L.P.,
  635 F. Supp. 2d. 126 (N.D.N.Y. 2008) ......................................................................... 15
Katara v. D.E. Jones Commodities, Inc.,
  835 F.2d 966 (2d Cir. 1987)............................................................................................. 6
Kaye v. Grossman,
  202 F.3d 611, 614 (2d Cir. 2000)..................................................................................... 5
Manufacturers Hanover Trust Co. v. Chemical Bank,
  160 AD2d 113 (1st Dept 1990), appeal denied 77 N.Y.2d 803 (1991) .................................. 24
Matos v. Michele DePalma Enters., Inc.,
  160 A.D.2d 1163- (N.Y. App. Div., 3d Dep't 1990) ........................................................... 32
Mazzaro de Abreu v. Bank of America Corp.,
  525 F. Supp. 2d 381 (S.D.N.Y. 2007)............................................................................ 30
Merrill Lynch & Co. v. Allegheny Energy, Inc.,
  500 F.3d 171 (2d Cir. 2007)........................................................................................... 12
Middle East Banking Co. v. State Street Bank International,
  821 F.2d 897 (2d Cir. 1987)..................................................................................... 14, 16
Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
  715 F.3d 102 (2d Cir. 2013)............................................................................................. 4
MoneyGram Payment Sys. v. Consorcio Oriental, S.A.,
  05-cv-10773, 2007 U.S. Dist.LEXIS 37374  (S.D.N.Y. May 21, 2007) ................................ 26
Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 28
  (S.D.N.Y. 2009). ......................................................................................................... 29
N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),
  266 F.3d 112 (2d Cir. 2001)........................................................................................... 34
NY. City Transit Auth. v. Morris J. Eisen, P.C.,
  276 A.D.2d 78 (1st Dept 2000) ........................................................................................ 5
Oster v. Kirschner,
  77 A.D.3d 51 (2010) ..................................................................................................... 29
Panix Promotions, Ltd. v. Lewis,
  2002 U.S. Dist. LEXIS 7176 SDNY 2002  (Jan 18, 2002)................................................... 21
Parsa v. State,
  64 N.Y.2d 143 (1984) .............................................................................................. 13, 22

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....................................................................... 31

Peters Griffin Woodward, Inc. v. WCSC, Inc.,
88 A.D.2d 882 (App. Div. 1st Dept. 1982) .............................................................. 25

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
582 F.3d 244 (2d Cir. 2009) .................................................................................. 4, 6

Raskin v. Wyatt Co.,
125 F.3d 55 (2d Cir. 1977) ........................................................................................ 4

Reynoso v. Tousson,
No. 14-CV-3564 (CBA) (JO), 2019 U.S. Dist. LEXIS 156982 (E.D.N.Y. Sep. 12, 2019)
(Amon, D.J.) ............................................................................................................... 4

Rotter v. Institutional Brokerage Corp.
1994 U.S. Dist. LEXIS 10157 (S.D.N.Y. July 22, 1994) (Keenan, D.J.) ................... 9

Scotto v., Almenas,
143 F.3d 105 (2d Cir. 1998) ...................................................................................... 9

MLSMK Inv. Co. v. JP Morgan Chase & Co.,
431 Fed. App'x 17 (2d Cir. 2011) ........................................................................... 30

Sid Paterson Adv. Inc. v. Giuffre Auto Group, LLC,
2007 NY Slip Op 52164(U)  (New York Co. Sup. Ct. October 29, 2007) ............... 17

Smith v. Smith,
No. 13-cv-1635, 2014 U.S. Dist. LEXIS 125371 (E.D.N.Y. Sep. 5, 2014) ....... 13, 24

Stack Elec. v. DiNardi Constr. Corp.,
161 AD2d 416  (1st Dept 1990) ............................................................................... 25

Swierczynski v. O'Neill,
41 A.D.3d 1145 (N.Y. App. Div., 4th Dep't 2007) .................................................. 32

Thyroff v. Nationwide Mut. Ins. Co.,
460 F.3d 400 (2d Cir. 2006) .................................................................................... 24

Toyota Tsusho Am., Inc. v. Siegel,
08-cv-10114, 2010 U.S. Dist. LEXIS 2220 (S.D.N.Y. Jan. 7, 2010) ......................... 5

Wilson v. Dantas,
746 F.3d 530 (2d Cir. 2014) .................................................................................... 27

## PRELIMINARY STATEMENT

Defendants are entitled to summary judgment on Plaintiffs Samuel Black and Bernard Black's ("Bernard") first cause of action for fraud (invoices) because the Declarations of Esaun Pinto and Joanne Black ("Joanne") establish that there are no misrepresentations contained on the invoices from Defendant CPI Investigations, Inc. ("CPI"), and the record is devoid of any evidence to raise an issue of fact as to the integrity of the representations on the invoices. Defendants are entitled to summary judgment on Plaintiffs' second cause of action for fraud by omission (bank accounts) because the Declarations of Pinto and Joanne establish that Pinto did not steal funds from Joanne's bank accounts at Chase and Wells Fargo, and the record is devoid of any evidence to raise an issue of fact with respect to who retained the funds and how the disputed funds were utilized.

Plaintiffs' third cause of action is identical to their first and second causes of action, and Defendants are entitled to summary judgment for the reasons stated above.

Plaintiffs' fourth cause of action for unjust enrichment is identical to Plaintiffs' sixth, seventh, and tenth causes of action.  Defendants are entitled to summary judgment for reasons stated below.

Defendants are entitled to summary judgment on Plaintiffs' fifth cause of action for unjust enrichment (SSDI Benefits) because the Declarations of Pinto and Joanne establish that Pinto did not steal any portion of Joanne's SSDI benefits, and the record is devoid of any evidence to indicate that Pinto retained or otherwise benefitted from Joanne's SSDI benefits. Defendants are entitled to summary judgment on Plaintiffs' sixth cause of action for money had and received (invoices) because (i) the declarations of Pinto and Joanne establish that Pinto performed all the services billed for and incurred all expenses billed for, and (ii) the documentary

evidence establishes that Bernard voluntarily paid Pinto's invoices, failed to timely object to such payment, and is now barred from contesting or otherwise reopening the account.

Defendants are entitled to summary judgment on Plaintiffs' seventh cause of action for money had and received (bank accounts) because the Declarations of Pinto and Joanne establish that Pinto did not steal funds from Joanne's bank accounts at Chase and Wells Fargo, and the record is devoid of any evidence to raise an issue of fact with respect to who retained the funds and how the disputed funds were utilized.

Plaintiffs' eighth cause of action for money had and received (bank accounts) is identical to their fifth cause of action. Defendants are entitled to summary judgment for the reasons stated above.

Defendants are entitled to summary judgment on Plaintiffs' ninth cause of action for money had and received (October 2014 Advance) because (i) Pinto did not come into possession of the disputed funds by oppression, imposition, extortion, deceit, or by the means of trespass, and (ii) Plaintiff provided the disputed funds to Pinto in accordance with an oral agreement for Pinto to provide services, rendering a breach of contract cause of action as Plaintiffs' proper remedy, and the record is devoid of any evidence to permit a reasonable jury to find otherwise.

Defendants are entitled to summary judgment on Plaintiffs' tenth cause of action for money had and received (July and September 2014 Payments) because (i) no reasonable jury could find that Defendants obtained any money belonging to Plaintiffs in connection with the September 2014 reimbursement request, and (ii) the documentary evidence establishes that Bernard voluntarily made the July 2014 payment, failed to timely object to such payment, and is now barred from contesting or otherwise reopening the account.

Defendants are entitled to summary judgment on Plaintiffs' eleventh cause of action for conversion (invoices) because (i) the record is devoid of any evidence to indicate Pinto did not earn the amounts billed in the invoices or that Pinto did not incur the expenses listed in the invoices, (ii) no reasonable jury could find that Plaintiffs made a demand for repayment of the allegedly converted sum prior to filing the instant action.

Defendants are entitled to summary judgment on Plaintiffs' twelfth cause of action for conversion (October 2014 advance) because (i) no reasonable jury could find that Plaintiffs have a superior possessory right to the allegedly converted sum, and (ii) the disputed funds stem from a contractual dispute for which a conversion claim cannot be based.

Defendants are entitled to summary judgment on Plaintiffs' thirteen cause of action for constructive fraud (invoices) because no reasonable jury could find that (i) Defendants made any misrepresentations of fact, and (ii) Pinto had a fiduciary or confidential relationship with Plaintiffs.

Defendants are entitled to summary judgment on Plaintiffs' fourteenth cause of action for negligent misrepresentation because no reasonable jury could find that (i) Defendants made any misrepresentation of fact, and (ii) Pinto shared a special relationship with Plaintiffs.

Wrigley is entitled to summary judgment on Plaintiffs' fifteenth cause of action for aiding and abetting and vicarious liability because no reasonable jury could conclude that (i) Defendants committed an underlying tort, (ii) Wrigley exercised control over Pinto or CPI, or (iii) Wrigley had actual knowledge that an underlying tort was committed.

## SUMMARY JUDGMENT STANDARD

The Court is well aware of the standard for summary judgment:

> A court grants summary judgment under Rule 56 only when, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108 (2d Cir. 2013), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," id. (quoting Fed. R. Civ. P. 56(a)). Because the "principles governing admissibility of evidence do not change" at this stage, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 65-66 (2d Cir. 1977)). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

Reynoso v. Tousson, No. 14-CV-3564 (CBA) (JO), 2019 U.S. Dist. LEXIS 156982, at *14 (E.D.N.Y. Sep. 12, 2019) (Amon, D.J.).

Here, summary judgment in favor of defendants is appropriate with respect to all of Plaintiffs' causes of action because the record is devoid of support for each claim.

## ARGUMENT

I.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR FRAUD (INVOICES)**

Plaintiffs first cause of action alleges that defendants "made the following false representations of material fact []:"

    a. claiming $21,748 in fraudulent and inflated expenses on their invoices
    to Cherie Wrigley;

b. claiming $81,400 in unperformed services on their invoices to Cherie Wrigley, by falsely claiming that Pinto was visiting Joanne three times per week;

c. claiming $8,625 in unperformed services by billing for 24 hours per day for Pinto and a driver during the period from April 12-19, 2013; and

d. claiming $21,048 in unperformed services by billing for five hours for each visit to Joanne, when a reasonable estimate of actual time, including travel time, is three hours.

Compl. at ¶595.

To prove a claim of fraud under New York law, a plaintiff must show that the defendant: (1) made material misrepresentations, (2) which he knew to be false, (3) possessing the intent to defraud, (4) that plaintiff reasonably relied on the misrepresentation, and (5) suffered damage as a result of the misrepresentation. Toyota Tsusho Am., Inc. v. Siegel, 08-cv-10114, 2010 U.S. Dist. LEXIS 2220, at *11-12 (S.D.N.Y. Jan. 7, 2010) (citing Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000)) (internal citations omitted), and NY. City Transit Auth. v. Morris J. Eisen, P.C., 276 A.D.2d 78, 85 (1st Dept 2000) ("An actionable fraud claim requires proof that defendant made a misrepresentation of fact which was false and known to be false. It also requires a showing that the misrepresentation was made with the intent to induce another party's reliance upon it.").

"A cause of action for fraud can only be based upon the misrepresentation of a present or past fact. The mere failure to keep contractual promises of future acts will not sustain an action for fraud." Hotel Constructors, Inc. v. Seagrave Corp., 574 F. Supp. 384, 387 (S.D.N.Y. 1983).

For claims of fraud, "[e]ach element must be established by clear and convincing evidence." Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 971 (2d Cir. 1987).

## A.     Expenses In The Amount Of $21,748

Plaintiffs alleged that defendants claimed $21,748 in expenses from April 2013 to September 2014, broken down as follows: "i. Gasoline: $4,000; ii. Tolls: $1,248; iii. Airfare: $800; iv. Pinto hotel: $1,000; v. Car rental: $2,700; and vi. Amounts claimed to be spent on Joanne, including motel, clothing, food, storage of belongings, and JB shopping: $12,000." Compl. at ¶553(d).  Plaintiffs allege that Defendants billed for these expenses without incurring them. Id. at ¶595.

Pinto's invoices and declaration establish that he spent at least the disputed amounts on these expenses (SOF ¶¶ 72-73).  Further, Joanne's declaration corroborates Pinto's spending for her benefit.  Plaintiffs have failed to provide any evidence that the disputed expenses were not incurred, or were otherwise fraudulent, inflated, or inaccurate.

Plaintiffs' allegations rely solely on Pinto's purported failure to provide receipts (id. at ¶496), that "all expenses were stated in round numbers" (id. at ¶497), and their belief that these expenses are "manifestly absurd." Id. at ¶498.  These conclusory allegations are insufficient to overcome summary judgment.  See Presbyterian Church of Sudan, 582 F.3d at 264 ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").   Absent any admissible evidence that Pinto did not incur the disputed expenses, Plaintiffs' claim for fraud based on false and/or inflated expenses in the amount of $21,748 must fail.

**B.      $81,400 In Unperformed Services By Falsely Claiming Pinto Was Visiting Joanne Three Times Per Week, And $21,048 In Unperformed Services By Billing For Five Hours For Each Visit To Joanne.**

Plaintiffs allege that from April 2013 to August 2014, Pinto billed for visiting Joanne three (3) times per week, for five (5) hours each visit. Compl. ¶457-482.  Plaintiffs further allege that during this time period Pinto did not actually visit Joanne the number of times and/or for the durations listed on his invoices, resulting in an overpayment of $102,448.00. Id. ($81,400 for inflated visits + $21,048 for inflated hours = $102,448).  Plaintiffs' conclusory allegations are refuted by Pinto and Joanne's declarations, both of which state that Pinto performed the services he billed for.  SOF ¶¶67.

The only evidence Plaintiffs identify to support this claim of fraud are visitor logs from the "South Beach Psychiatric Center [] in Staten Island," the alleged contents of which are described in the Complaint. Compl. ¶466.  According to Plaintiffs, these visitor logs "demonstrate that Pinto visited Joanne an average of only 1.2 times per week from May 22, 2014 to August 31, 2014, not the three times per week that he was paid for." Id.   Plaintiffs allege this resulted in $81,400 in overbilling for the period of April 2013 to August 2014. Compl. ¶479

Plaintiffs also claim that these visitor logs establish that the totality of Pinto's visits averaged "only 56 minutes per visit," when Pinto "charged for five hours per visit." Compl. ¶477.  Plaintiffs' calculation of loss is based on their claim that "a reasonable estimate of actual time" is only three (3) hours per visit, not five (5).  Id. Plaintiffs' calculation of Pinto's overbilling for time spent during his visits from April 2013 to August 2014 totals $21,048. Compl. at ¶¶ 480-482.

Plaintiffs' allegations are entirely unsupported by the record.  The purported visitor logs on which Plaintiffs rely only cover the time period of May 22, 2014 to August 31, 2014. Compl.

¶466.  Pinto's invoices during this time period do not contain any representations as to the number and duration of his visits to Joanne, and therefore cannot form the basis of a fraud claim for the period of May 22, 2014 to August 31, 2014. SOF ¶48.

The remaining evidence on the record establishes that Pinto never represented that he visited Joanne three (3) times per week for (5) hours from April 2013 to August 2014 as the Plaintiffs' claim; nor does the record indicate that Plaintiffs' payments to Pinto were in any way premised on such a requirement.

For example, a November 17, 2013 email from Bernard to Pinto states, "Esaun: [...] Cherie and I think that once Joanne is moved, your visits can be cut back in frequency, initially to twice per week. I understand from Cherie that you agree with this plan." SOF ¶45.  A subsequent email dated February 19, 2014 from Pinto to Bernard states: "I have reduced my visits to twice a week on most weeks however sometimes things come up and I am needed." SOF ¶47.

These emails between the parties squarely contradict Plaintiffs' allegation that: "[b]eginning in January 2014, Bernard succeeded in negotiating with Pinto for a lower monthly flat rate of $8,000 per month, for the same minimum visit frequency of three times per week." Compl. at ¶459.  In reality, Bernard agreed to Pinto's reduction in visits, and continued to pay Pinto a flat rate payment of $8,000 per month until August 2014. SOF ¶49. Thus, Plaintiffs' conclusory allegation is rebutted by the evidence.

Additionally, as noted above, an action for fraud must be premised on representations of a past or existing fact.  Hotel Constructors, supra.  For the time period of May 22, 2014 to August 31, 2014, the record reveals that Pinto requested monies in advance. SOF ¶47.  Such arrangement legally renders Pinto's representations "contractual promises" to perform services in

8

the future.   Hotel Constructors, 574 F. Supp. at 387; ("A cause of action for fraud can only be based upon the misrepresentation of a present or past fact.  The mere promise of future acts will not sustain an action for fraud"); Rotter v. Institutional Brokerage Corp. 1994 U.S. Dist. LEXIS 10157 *10 (S.D.N.Y. July 22, 1994) (Keenan, D.J.) ("New York law is well established that a fraud claim cannot be based on solely the failure to perform a contractual promise.")  Therefore, Plaintiffs' causes of action sound in breach of contract, not fraud.

For periods prior to what is covered by the visitor logs (May 22, 2014), the record is devoid of any evidence to indicate that Pinto did not perform the services he billed for. Plaintiffs attempt to make up for this deficiency by extrapolating ("upon information and belief") the frequency of Pinto's visits for the periods before the visitor logs based on the alleged information contained in the visitor logs, which only cover May 22, 2014 to August 31, 2014. Compl. ¶473.  Such extrapolation is purely speculative and does not constitute admissible evidence sufficient to create a genuine issue of material fact. See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (the nonmoving party may not rely on "unsubstantiated speculation" in order to defeat a motion for summary judgment.)

This is true of Plaintiffs' calculations for both the number of Pinto's visits, as well as the duration of Pinto's visits. Compl. ¶477.  Additionally, Plaintiffs' speculation regarding how long it took Pinto to travel to and from visits with Joanne is equally incompetent (see Compl. ¶480). Therefore, Plaintiffs cannot rebut Joanne and Pinto's statements indicating Pinto performed the services he billed for.

Finally, with respect to Wrigley, the record contains no evidence to substantiate Plaintiffs' claim that Wrigley was responsible for ensuring that Pinto actually made three (3)

visits per week and spent five (5) hours related to each visit. Compl. at ¶¶460-61.  Thus she

cannot be liable under any of the vicarious liability theories Plaintiffs advance.

### C.     $8,625 In Unperformed Services By Billing For 24 Hours Per Day For Pinto And A Driver During The Period From April 12-19, 2013

Plaintiffs' also claim that Pinto fraudulently inflated the hours he worked for Joanne

between April 12-April 22, 2013, when she was off her medication and was living virtually

homeless in Denver, Colorado. Compl. at ¶¶501, 595(c).  Plaintiffs alleged that Pinto billed

"$15,600 for Pinto's time, charged at $150 per hour, for 153 consecutive hours [and] $1,650 for

driver, charged at $50 per hour for 33 consecutive hour." Compl. at ¶495.  Plaintiffs' calculate

their purported $8,625 loss based solely on an unsupported assumption: "If one assumes as 12-

hour workday for Pinto and the driver, then half of the $17,250 combined bill for them, or

$8,625, is fraudulent." Compl. at ¶501.

Plaintiffs' assumption is squarely contradicted by the record, which reveals that during

eight (8) days between April 12-19, 2013, Pinto worked around the clock to secure, monitor, and

care for Joanne. SOF ¶ 26.  In fact, Joanne required 24 hour monitoring until June 3, 2013.  Id.

Pinto and Joanne's declarations specifically state that Pinto and/or his employees were with

Joanne "all hours of each day." Id.

Email communications between the parties corroborate the statements in the declarations.

Pinto listed his time on the invoice covering the April 12-19, 2013 period, prompting Bernard to

urge Pinto to lower the number of hours he was working. SOF ¶ 34.  In response, on May 14,

2013 Pinto sent Bernard an email stating: "We have cut the amount of hours to 12 per day this

has drastically lowered the bill. [...] As I continue to gain Joanne's trust I hope to reduce the

amount of hours necessary. [...]  Again I will do my best to continue reducing the hours without compromising Joannes safety." SOF ¶ 33.

Additionally, an email from Pinto to Wrigley dated April 16, 2013 states: "As of today, at 4pm et. I have a total of 96hrs invested in this case at an hourly rate of $150." SOF ¶ 28. Wrigley advised Bernard of Pinto's substantial work as well in an email dated April 25, 2013 in which she stated, "Esaun and his team have worked wonders with Joanne. There are at least 20 things I could list that a psych hospital was unable to do in months that he has accomplished in a week & 1/2 Ex. Take off her many layers of clothing, bathe, bandages off her face, calm her, make her happy and safe." SOF ¶ 309.  Since Plaintiffs have failed to produce any evidence to indicate Pinto did not provide 24-hour services for Joanne from April 12-22, 2013, Plaintiffs' claim alleging fraud in the amount of $8,625 must fail.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFFS' SECOND CAUSE OF ACTION FOR FRAUD BY OMISSION (BANK ACCOUNTS)

Plaintiffs second cause of action specifically alleges that: "Defendants Pinto and CPI knowingly made material omissions of facts when they failed to disclose on invoices or otherwise reveal to Bernard Black that Defendant Pinto stole money from Joanne Black's Chase and Wells Fargo bank accounts on multiple occasions, as detailed above."  Compl. at ¶605. Plaintiffs further allege that Defendants Pinto and CPI omitted the bank withdrawals for the purpose of inducing Bernard Black to rely upon these incomplete, false invoices," and "[a]s a result, [plaintiff] paid more to Defendants Pinto and CPI then they were due, reducing the assets available to the SNT." Compl. at ¶¶ 607, 610.

The Complaint lists the totality of withdrawals from Joanne's bank accounts at Chase and Wells Fargo from Spring 2013 to Fall 2014, all of which Plaintiffs alleges were performed by

Pinto.  Compl. at ¶¶ 168-412.  After accounting for $22,600 in withdrawals that Pinto reported

on his invoices, Plaintiffs conclude that there was $43,776.87 in withdrawals from Joanne's

accounts that Pinto did not report. Id. at ¶425.   Plaintiffs further allege: "Pinto did not return any

of these funds to Joanne."  Id. at ¶426.  Plaintiffs further allege that had Bernard known that

Pinto had paid himself from Joanne's accounts, Bernard would not have provided him additional

payment from the SNT. Id. ¶649.

To sustain a claim of fraud by omission, Plaintiffs must establish that the defendant had a

duty to disclose the concealed fact, in addition to the traditional elements of fraud (as noted

above).  Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).

Here, contrary to Plaintiffs' allegations, there is no evidence that the funds withdrawn

were retained by Pinto, let alone retained by Pinto as payment for services.  In fact the opposite

is true – Joanne's declaration confirms that Pinto: "utilized the funds for [Joanne's] benefit by

either providing the funds directly to [Joanne], placing the funds in a safe location that [Joanne]

was aware of, or spending the funds at [Joanne's] direction for items or services that [she]

needed."  SOF ¶ 77.  Pinto also used some of the withdrawals to reimburse himself for out-of-

pocket expenses that he had previously incurred for Joanne's benefit, but was not reimbursed for.

SOF ¶ 78.  Joanne's declaration further establishes that she used these funds for clothing, food,

storage of belongings, and shopping, and other personal necessities. SOF ¶ 80.

Thus, any withdrawals that were omitted from the invoices were immaterial because they

were not used for Pinto's payment as Plaintiffs allege. Additionally, there is no evidence on the

record to indicate that Pinto had any obligation to document Joanne's use of her own funds from

the Chase or Wells Fargo account.  Absent such a duty to disclose, Plaintiffs cannot prove fraud

by omission.

III.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFFS' THIRD CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION (INVOICES AND BANK ACCOUNTS)**

Plaintiffs' claim for fraudulent misrepresentation is based on defendants Pinto and CPI: (1) knowingly overstating the amounts due for expenses and for their services, and (2) knowingly understating or failing to account for the amounts already withdrawn from Joanne Black's bank account. Compl. at ¶619.

New York Courts apply the elements of fraud to claims for fraudulent misrepresentation. See Smith v. Smith, No. 13-cv-1635, 2014 U.S. Dist. LEXIS 125371, at *22-23 (E.D.N.Y. Sep. 5, 2014) (Feuerstein, D.J.).

With respect to defendants' alleged "overstating [of] the amounts due for expenses and for their services," this is identical to Plaintiffs' first cause of action and therefore must be dismissed for the reasons stated in Section I, above. pp. 4-11.

With respect to defendants' purported failure to account for amounts withdrawn, as stated above, this is identical to Plaintiffs' second cause of action, and therefore must be dismissed for the reasons stated in Section II, above. pp. 11-12.

IV.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFFS' FOURTH THROUGH TENTH CAUSES OF ACTION FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED**

"[M]oney had and received is a contract implied in law. Although the action is recognized as an action in implied contract, the name is something of a misnomer because it is not an action founded on contract at all; it is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another."  Parsa v. State, 64 N.Y.2d 143, 148 (1984).  Under New York State law, the elements of money had and received are:

> (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money.

Middle East Banking Co. v. State Street Bank International, 821 F.2d 897, 906 (2d Cir. 1987); see also Aaron Ferer & Sons, Ltd. v Chase Manhattan Bank, N.A., 731 F.2d 112,125 (2d Cir. 1984). This claim is subject to dismissal if plaintiffs fail to provide any evidence that defendants possess any money that belongs to Plaintiffs. Id. (citing Goldfine v. Sichenzia, 73 AD3d 854, 902 N.Y.S.2d 117 (2d Dept 2010)).

Unjust enrichment "is available only in unusual situations when circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) (internal quotations omitted). "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Id at 791. As the Court has previously acknowledged, to prove an unjust enrichment claim under New York law, a Plaintiff must show:

> that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012); see also Bigio v. Coca-Cola Co., 675 F.3d 163, 176-77 (2d Cir. 2012) (same). The New York Court of Appeals has made clear, however, that "unjust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 944 N.Y.S.2d 732 (2012). Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

Abbott Labs. v. Adelphia Supply USA, No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007, at *40-41 (E.D.N.Y. Jan. 4, 2017) (Amon, D.J.).

A cause of action for unjust enrichment is essentially identical to a claim of money had and received. Belda v. Doerfler, 2015 U.S. Dist. LEXIS 133483 *12 n.4 (S.D.N.Y. September 30, 2015) (Nathan, D.J.), citing In re Estate of Witbeck, 245 A.D.2d 848 (3d Dept. 1997) ("The causes of action for unjust enrichment and money had and received are identical"), and JLC Penny Corp. v. Carousel Ctr. Co., L.P., 635 F. Supp. 2d. 126, 129 n.1 (N.D.N.Y. 2008). In this respect, Plaintiffs' fourth and fifth causes of action for unjust enrichment mirror several of Plaintiffs' other causes of action for money had and received, and will thus be discussed in tandem.

### A. Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth Cause of Action for Unjust Enrichment (Invoices) and Plaintiffs' Sixth Causes of Action for Money Hand And Received (Invoices)

Plaintiffs' fourth cause of action for unjust enrichment and sixth cause of action alleging money had and received both allege that defendants were unjustly enriched at Plaintiffs' expense by submitting invoices and accepting payment for expenses they did not incur and services they did not perform. (Compl. at ¶626; 645).

Plaintiffs allege in their sixth cause of action for money had money received that "Defendants Pinto and CPI received money, in the form of payments on CPI invoices, for expenses that were not in fact incurred and services that were not provided. These funds by right belonged to and would otherwise have been paid to the SNT." Compl. at ¶645.

Defendants are entitled to summary judgment on this cause of action because, as detailed above in Section I, Plaintiffs have failed to produce any evidence in opposition to defendants' ample showing that Pinto earned the amount he was paid and incurred the expenses listed in his

invoices.  Without such evidence, summary judgment is appropriate because Plaintiffs cannot

establish that defendants "received money belonging to plaintiff." Middle East Banking Co., 821

F.2d at 906.

In addition, the doctrine of account stated prevents Plaintiffs from recovery on both

Plaintiffs' unjust enrichment and a money had and money received claims under the fourth and

sixth causes of action. See Aioi Nissay Dowa Ins. Co. v. Prosight Specialty Mgmt. Co., 2013

U.S. Dist. LEXIS 87050 *39-40 (S.D.N.Y. June 20, 2013) (Oetken, D.J.) ("Under New York

law, an account stated is an agreement between the parties to an account based upon prior

transactions between them with respect to the correctness of the separate items composing the

account and the balance due, if any, in favor of one of party of another.")  "The doctrine of

account stated may be raised by [...] a defendant seeking to prevent the reopening of a paid

account, as is the case here." Eklecco Newco, LLC v. Q of Palisades, LLC, 93 A.D.3d 1233,

1235-36 (4th Dept 2012)

Here, Plaintiffs are precluded from recovery because Bernard implicitly, and on occasion,

explicitly, agreed to the accuracy of the amounts he already paid to Pinto.  For example on July

2, 2013 Bernard wrote to Pinto:

> Esaun: [...] At this point I do not understand the basis for your most recent
> bill to cover a period prior to June 3, a period for which you have already
> billed. Cherie told me repeatedly during this period that you were billing
> for the time of others, but not for your own time. As you know, I was very
> concerned about weekly cash burn. Over time, we reached an agreement
> on a burn rate of $5,000 per week. I took that to be a total, not an amount
> to which you would later add $2 -3,000 per week for your own time. [...] I
> will pay your latest bill from June 3 forward, adjusted for any under- or
> overpayment prior to that. I continue to be frustrated by the lack of an
> integrated bill showing all expenses and payments. The attached
> spreadsheet is my best effort, after substantial effort, to build such a bill,
> relying on your statements for specific weeks and your most recent
> statement. [...] Cherie advises me that you will be able to document some
> additional expenses during that period, and I'm willing to consider that, if

you provide me with details. **Otherwise, I consider the period from inception through June 24 to be closed**.

SOF ¶ 39 (emphasis added).

Bernard's diligent review of Pinto's invoices through June 24th, agreement to pay certain amounts to Pinto, and "closing" of that period, precludes Plaintiffs from now "reopening" for this paid period.  In re Rockefeller Ctr. Props., B.R. 804 SDNY Bankruptcy 1999 * 819 (October 8, 1999) (Beatty, B.J.).

Additionally, in a September 30, 2014 email to Pinto, Bernard stated: "Please consider your services to me [...] terminated, effective as of September 30, 2014."  SOF ¶57.  He then noted specific objections he had with Pinto's billing, which included only the "advance payment" of $4,000 for October 2014 (discussed below in Section IV(E)), and the withdrawals from Joanne's bank accounts (discussed below in section IV(B)).  Id.  The first time Bernard alleged Pinto was paid for services he didn't perform and expenses he didn't incur was in the instant Complaint, which was filed more than a year later.

Because Plaintiffs paid the invoices they now contest, and did not object to such payment for more than a year, Plaintiffs cannot now complain that the invoices were inaccurate.  Sid Paterson Adv. Inc. v. Giuffre Auto Group, LLC., 2007 NY Slip Op 52164(U) at ****4-5 (New York Co. Sup. Ct. October 29, 2007).  For these reasons, defendants are entitled to summary judgment on Plaintiffs' fourth and sixth causes of action.

**B.    Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth Cause of Action for Unjust Enrichment (Invoices) and Plaintiffs' Seventh Cause of Action for Money Had and Received (Bank Accounts)**

Plaintiffs' fourth cause of action for unjust enrichment is partially premised on "Pinto's undisclosed withdrawals of funds from Joanne's Chase and Wells Fargo checking accounts." Compl. ¶627(i).  Similarly, Plaintiffs' seventh cause of action for money had and received

alleges that the Defendants "were enriched at Plaintiffs' expense by taking and keeping money

from Joanne's Chase and Wells Fargo bank accounts as described above, which resulted in

double payment of Pinto and CPI because they invoiced Cherie Wrigley for services and

expenses that had already been compensated for by the undisclosed withdrawals."  Compl. ¶649.

Plaintiffs assert the allegation in a simpler fashion on page 18 of the Complaint, stating: "Pinto

Steals from Joanne's Bank Accounts."

As argued above in Section II (pp. 11-12), Pinto provided all funds from the disputed

withdrawals to Joanne.  Therefore no jury could conclude he was enriched or otherwise

benefitted, rendering his claims for unjust enrichment and money had and received meritless.

Accordingly, defendants are entitled to summary judgment on Plaintiffs' fourth and seventh

causes of action.

### C.  Defendants Are Entitled to Summary Judgment On Plaintiffs' Fourth Cause of Action for Unjust Enrichment and Plaintiffs' Tenth Cause of Action for Money and Received (July and September 2014 Payments)

Plaintiffs' fourth cause of action for unjust enrichment is partially premised on: "Pinto

billing a flat rate for his services for July and September 2014, and separately billing Wrigley for

services during these periods." Compl. ¶627(ii).  Plaintiffs' tenth cause of action for money had

and received is based on the same allegation. Compl. ¶669.  Specifically, Plaintiffs allege that

Pinto improperly charged an extra  "$2,300 for four visits he made to Joanne together with

Wrigley," in July 2014, as well as an extra "$3,950 for visiting Joanne together and chauffeuring

Wrigley around New York" in September 2014. Compl. at ¶¶ 485-86.

With respect to the alleged overpayment of $3,950 for September 2014, Plaintiffs claim

must fail because the record establishes that Plaintiffs never paid such sum to Pinto or Wrigley.

Compl. at ¶546.  The Complaint specifically states:  "Pinto sought payment by Bernard, from

Estate funds, of $3,950 for visiting Joanne with Wrigley during Wrigley's first visit in September

2014. **Bernard did not pay this amount**, as he had already paid Pinto and CPI for the full

month of September." SOF ¶ 88 (emphasis added); see also, id. at ¶486 ("Wrigley paid Pinto,

and is expecting to seek reimbursement from the SNT and 2013 Trust.")  Thus no reasonable

jury could find that Pinto obtained $3,950 belonging to Plaintiffs with respect to September

2014, and therefore Plaintiffs cannot satisfy the first element of money had and received.

Regarding the alleged overpayment of $2,300 for July 2014, Plaintiffs agreed to an

account stated and cannot not now be heard to complain that they overpaid. Eklecco, 93 A.D.3d

at 1235-36; In re Rockefeller Ctr. Props., B.R. 804 SDNY Bankruptcy 1999 * 819.  The

Plaintiffs failed to timely object to Pinto's billing and Wrigley's reimbursement request, and had

settled the account with Pinto by September 30, 2014 at the latest (see section IV(A), supra).

Plaintiffs paid Pinto his flat rate fee of $8,000, prior to July 2014.

The evidence establishes that when Plaintiffs made the payment of $2,300 to Wrigley,

they were well aware that Wrigley was requesting reimbursement of payment she had provided

to Pinto over and above his monthly flat rate fee.  After her July 2014 visit to New York,

Wrigley specifically itemized her expenses before requesting reimbursement from Bernard.

Compl. at ¶565-70.  In addition to the other expenses associated with her visit (including airfare,

animal care, and her per diem rate (id.)), Wrigley specifically requested reimbursement for

"$2,300 in compensation she paid to Pinto."  Compl. at ¶569. Plaintiffs paid her at some point

thereafter.

Plaintiffs had an opportunity to object or refuse to reimburse Wrigley, just as they did

with respect to the reimbursement requested for September 2014 (as described above).  However

Plaintiffs failed to do so.  Plaintiffs also failed to object to the July 2014 payment when they

terminated Pinto on September 30, 2014, or anytime thereafter prior to filing the instant

Complaint.  Plaintiffs claims are therefore barred.  Eklecco, supra; In re Rockefeller Ctr. Props.,

supra;  Sid Paterson, supra, 2007 NY Slip Op 52164(U) at ****4-5 ("The recipient of an account

is duty bound to examine it [...]  Since for several years defendants paid the bills without protest

or even inquiry and were not laboring under any material mistake of fact when they did so, the

voluntary payment doctrine bars defendants' [counterclaims].")

> **D.     Defendants Are Entitled to Summary Judgment On Plaintiffs' Fifth Cause of
> Action for Unjust Enrichment (SSDI Benefits) and Plaintiffs' Eighth Cause
> of Action for Money Had and Received (SSDI Benefits)**

Plaintiffs' fifth and eight causes of action that Pinto "received money, in the form of

Joanne Black's SSDI benefit payments, which resulted in double payment of Pinto and CPI for

the period of May through September 2014, from funds that should have and otherwise would

have been contributed to the SNT."  Compl. at ¶649; see also id. at ¶¶433-34.  In essence,

Plaintiff alleges that Pinto stole Joanne's SSDI payments totaling $10,975.00 (id. at ¶453) to use

for his own benefit.  Id. at ¶¶438, 443, 445, 447.  According to Plaintiff:  "The SSDI payments

[Pinto] received for May 2014 through January 2015 remain unaccounted for."  Id. at 452.

However, the evidence on the record establishes that Pinto never retained any of Joanne's

SSDI funds.  SOF ¶¶ 86-87.  Instead, Pinto provided these funds directly to Joanne.  Id. at ¶84.

After receiving the SSDI funds from Pinto, Joanne either spent them on herself or saved them in

a safe place because she was afraid that Bernard was going to steal her SSDI money. Id. at ¶82,

84

Again, Plaintiffs' alleged ignorance of what happened to Joanne's SSDI payments is a

result of their own negligence as fiduciaries, and as litigants in this matter.  They never once

asked Joanne why Pinto became her SSDI Representative Payee, or what happened with the

$10,975.00 in unaccounted payments.  When asked why he never inquired into Pinto's involvement with the SSDI payments, Bernard answered: "I don't know that I asked the question why.  I simply did not."  SOF ¶91.

For these reasons, there is no question of fact that Pinto did not enrich himself or otherwise benefit from Joanne's SSDI payments.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' fifth (unjust enrichment) and eighth (money had and received) causes of action.

### E.   Defendants Are Entitled to Summary Judgment On Plaintiffs' Ninth Cause of Action for Money Had and Received (October 2014 Advance)

Plaintiffs' ninth cause of action for money had and received alleges that:  "Defendants Pinto and CPI received a $4,000 advance from the Estate of Renata Black for October 2014.  Because their services were terminated at the end of September 2014, they were not entitled to that money."  Comp. at ¶662; see also, id. at 556.

Taking the evidence on the record in a light most favorable to the Plaintiffs, it is clear the alleged unreturned advance cannot form the basis of a claim for money had money received because (i) Pinto did not come into possession of the disputed funds by improper or nefarious means, and (ii) there was an express agreement for services between the Plaintiffs and Pinto that governed the payment of the so-called advance.

For example, in Panix Promotions, Ltd. v. Lewis, (2002 U.S. Dist. LEXIS 7176 SDNY 2002 *7 (Jan 18, 2002) (Baer, D.J. )), the Plaintiff, a boxing promotion company, alleged that it overpaid a fighter in excess of $1,230,000 based on the fighter's "oral promise to maintain [plaintiff] as his co-promoter for his boxing career […] and thus maintain his relationship with [plaintiff]."  Id. at *9.

The Panix court dismissed the cause of action for money had and received on two bases. First, the Panix court noted that: "[t]raditionally, the remedy for money had and received is available if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass." Id. at *7; see also, Parsa, supra, 64 N.Y.2d at 148. The Panix court continued:

> It can not be said here that [the defendant] came to possess the $1.23 million by means of oppression, imposition, extortion, deceit or trespass - nor does [plaintiff] so allege. [Plaintiff] also fails to suggest that [defendant] wrongfully withheld money to which [plaintiff] is entitled. Rather, [plaintiff] essentially claims that it is owed money - that it *intentionally* paid [defendant] - because [defendant] failed to perform.
>
> […]
>
> To state it another way, [plaintiff] has no possessory interest in the money that it seeks from [defendant], as it was freely given to him with the expectation of performance, not repayment.  Thus, [plaintiff's] claim fails the first element of an action for money had and received, and sounds instead in breach of contract.

Id. at *8-9 (internal citations omitted) (emphasis in original).

Second, the Panix court found that the plaintiff initially provided the disputed funds to the defendant pursuant to an oral agreement governing the parties' relationship.  The court ruled that this was an additional ground to dismiss plaintiffs' claim for money had and received, stating:

> [T]he law is also clear that an action for money had and received is derived from an implied contract, and a contract cannot be implied in fact where there is an express contract covering the subject matter involved. Put another way, it is a duty that may arise when there is no contract. Here, the plaintiff admits there was a contract, albeit an oral one.

Id. at *9 (internal citations and quotations omitted).

Both justifications observed by the <u>Panix</u> court are applicable here.  Plaintiffs voluntarily provided Pinto the advance pursuant to an agreement that Pinto would provide services in September 2014. Compl. ¶543-44.  As described in the Complaint:

> Effective September 1, 2014, Bernard informed Pinto that he would pay, from Estate funds, only $4,000.00 per month for his services, and that Pinto could reduce his visit frequency accordingly. [] Bernard informed Pinto that his advance payment of $8,000 should cover both September and October 2014.

<u>Id</u>.  Thus, what Plaintiffs describe as an "October 2014 Advance" was actually a flat rate payment of $8,000 for Pinto's services for the month of September 2014, which, after paying, Plaintiffs unilaterally decided to cut in half.  <u>Id</u>.

Thus, no reasonable jury could conclude that Pinto came into possession of the $4,000 by way of "oppression, imposition, extortion, or deceit, or by the commission of a trespass." <u>Id</u>. at *7; <u>see</u> <u>also</u>, <u>Fernbach, LLC, v. Capital & Guar, Inc</u>., 2009 U.S. Dist. LEXIS 71564 *13 (S.D.N.Y. August 12, 2009) (Stein, D.J.) ("Specifically, courts have found that plaintiffs lack the requisite possessory interest in money freely given to a defendant with the expectation of performance.")

Additionally, there is no question of fact that Plaintiffs paid Pinto in accordance with an oral agreement for Pinto to provide services. Compl. ¶543-45. Again, Plaintiffs initially paid Pinto $8,000 in exchange for services for September 2014, only to request return of half of the payment at the end of September 2014. <u>Id</u>; SOF ¶¶52-54.

Because Plaintiffs' alleged claim stemmed from an agreement for services rendered in September 2014, the proper cause of action sounds in breach of contract, not the equitable claim of money had and received. <u>Id</u> at *10 ("It is hardly a recent proposition that where the money at issue freely came to [defendant] through an agreement, rather than pursuant to a wrong, a cause

23

of action for money had and received may not lie.").  For these reasons Defendants are entitled to summary judgment on Plaintiffs' Plaintiffs' ninth cause of action.

## V.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ELEVENTH AND TWELFTH CAUSES OF ACTION FOR CONVERSION

The Eleventh cause of action for conversion is based on Plaintiffs' payment of Pinto's allegedly "false and inflated invoices."  Compl. ¶676.

"According to New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (quotations, brackets and citation omitted). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Smith v. Smith, No. 13-CV-1635 (SJF)(ARL), 2014 U.S. Dist. LEXIS 125371, at *21-22 (E.D.N.Y. Sep. 5, 2014) (Feuerstein, D.J.) (citing Colavito v. New York Organ Donor Network. Inc., 8 N.Y.3d 43, 50, (2006). "If a defendant acquired the disputed property lawfully, it is an essential element of the conversion claim that the plaintiff have first demanded the return of the property and been rebuffed by the defendant." Lifeng Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 451 (S.D.N.Y. 2014) (internal citations omitted).

While money may be the subject of a conversion claim, it must be specifically identified and segregated, and there must be an obligation to return or otherwise treat the specific fund in a particular manner. Manufacturers Hanover Trust Co. v. Chemical Bank, 160 AD2d 113, 559 (1st Dept 1990), appeal denied 77 N.Y.2d 803 (1991).  In addition, the plaintiff must show legal ownership, or an immediate superior right of possession, and control of the identifiable fund.

Castaldi v. 39 Winfield Assocs., 30 A.D.3d 458 (2d Dept 2006); Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d at 884, (App. Div. 1st Dept. 1982).

If the claim alleges an obligation to pay plaintiff money that he or she is owed, a conversion is not alleged, despite the fact that a specific fund is the subject of the claim (see Stack Elec. v. DiNardi Constr. Corp., 161 AD2d 416, 417 (1st Dept 1990); Interstate Adjusters v. First Fid. Bank, N.J., 251 A.D.2d 232, 234 (1st Dept 1998).  Moreover, conversion cannot be maintained where the damages are merely being sought for a breach of contract.  Fesseha v. TD Waterhouse Inv. Servs., 305 AD2d 268, 269 (1st Dept 2003); Peters Griffin Woodward, Inc. v WCSC Inc., 88 AD2d at 884.

Summary judgment is appropriate with regard to Plaintiffs' eleventh cause of action because Plaintiffs have not produced any evidence to show Pinto and CPI did not earn the amounts billed in his invoices and which were paid.  See Section I, supra.  Nor have Plaintiffs produced any evidence in support of their claim that Pinto was paid for expenses he never incurred.  Without any such evidence, Plaintiffs conversion claim fails because they cannot show Plaintiffs ever had a possessory right or interest in the property.  Smith, 2014 U.S. Dist. LEXIS at *21-22.

Additionally, Plaintiffs cannot succeed in their conversion claim because they neither alleged nor provided any evidence that Plaintiffs previously made any demand for repayment of money they claimed was overbilled.  Their failure to allege or provide evidence that they requested repayment of any inflated amounts paid to Pinto is fatal to their conversion claim based on fraudulently inflated hours and expenses. New Trend Apparel, Inc., 8 F. Supp. 3d at 451.

Plaintiffs' twelfth cause of action alleges that Defendants converted what Plaintiffs purport to be an "advance for October 2014" of $4,000.  Compl. ¶683.  However, the record establishes that Pinto's possessory right to the $4,000 is superior to that of Plaintiffs.

Plaintiffs voluntarily paid $8,000 to Pinto prior to September 1, 2014 pursuant to an agreement that Pinto would provide services for the month of September 2014. SOF ¶52-53. Subsequently, on September 2, 2014, Bernard unilaterally decided to pay only half of the fee that he had previously agreed to pay for September 2014, and told Pinto to put the remaining $4,000 towards the month of October 2014.  Id. at ¶54.  Pinto never agreed to reduce his fee for September 2014. Id. at ¶55.  On September 30, 2014 Bernard terminated Pinto and requested return of $4,000, which Bernard claimed was an advance payment for October 2014. Id. at ¶57.

Plaintiffs relinquished their superior right to the $4,000 prior to September 2014 when they voluntarily paid Pinto $8,000 for services in September.   JHAC LLC v. Advance Entertainment, LLC, 2020 N.Y. Misc. LEXIS 2597 *2 ("The court contemporaneously dismissed plaintiff's cause of action for conversion, because as alleged in the complaint, plaintiff's money first went into the scheme, and once that occurred, plaintiff lost its superior possessory interest in the money"). Thus, Defendants are entitled to summary judgment.

Additionally, the record establishes that Plaintiffs are attempting to recoup a debt of $4,000 allegedly owed to them, and thus Plaintiffs' cause of action sounds in breach of contract, not conversion. MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 05-cv-10773, 2007 U.S. Dist. LEXIS 37374 *29 (S.D.N.Y. May 21, 2007) (Berman, D.J.) (internal quotations omitted) ("On the other hand, Plaintiff's conversion claim with respect to the $ 1 million Reimbursement and $ 400,000 Post-Termination Funds is dismissed because, among other reasons, [a]n action for conversion of money is insufficient as a matter of law unless it is alleged that the money

converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession. An action of conversion does not lie to enforce a mere obligation to pay money.")

## VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' THIRTEENTH CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD

Plaintiffs allege that Pinto and CPI made false representations of material fact "by and in the course of demanding payment of inflated and fraudulent expenses and for unperformed services on their invoices" and had a fiduciary or confidential relationship with Plaintiffs. Compl. ¶690.

"The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." Wilson v. Dantas, 746 F.3d 530, 536 n.2 (2d Cir. 2014) (quoting Klembczyk v. Di Nardo, 265 A.D.2d 934, 705 N.Y.S.2d 743, 744 (4th Dep't 1999)); see also E*TRADE Fin. Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 387-88 (S.D.N.Y. 2009), aff'd, 374 F. App'x 119 (2d Cir. 2010) (quoting @Wireless Enters. v. AI Consulting, LLC, No. 05-CV-6176 CJS(P), 2006 U.S. Dist. LEXIS 79874, at *8 (W.D.N.Y. Oct. 30, 2006)) ("This relationship is one warranting the trusting party to repose his confidence in the defendant and therefore relax the care and vigilance that he would normally exercise in the circumstances.  Such a relationship requires demonstrating a high degree of dominance and reliance, and where parties have an arm's length business relationship, a plaintiff's subjective claims of reliance on defendant['s] expertise are insufficient.").

Here, defendants are entitled to summary judgment with respect to Plaintiffs' claim for constructive fraud because, in addition to their failure to produce evidence that Pinto made false

representations, the record is devoid of evidence of a fiduciary or confidential relationship between Plaintiffs and Pinto.  It is undisputed that it was Bernard, not Pinto, who was Joanne's conservator and a trustee of the SNT, which imposed upon him fiduciary responsibilities to oversee spending from the Estate of Renata Black that would otherwise flow to the SNT. SOF ¶ 60.  Accordingly, no reasonable jury could conclude that Plaintiffs could have "relaxed the care and vigilance" that he would normally exercise in the circumstances due to his relationship with Pinto. Id. Summary judgment is therefore appropriate in favor of Defendants.

## VII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FOURTEENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

Plaintiffs allege Defendants are liable for negligent misrepresentation based on their purported "fraudulent and inflated claims of expenses, claims for services not provided, double billing through Pinto's undisclosed withdrawals from Joanne's Chase and Wells Fargo accounts, and undisclosed taking of Joanne's SSDI benefits." Compl. at ¶702.

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Childers v. N.Y. & Presbyterian Hosp., 36 F. Supp. 3d 292, 310-11 (S.D.N.Y. 2014) (citing Hydro Inv. Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000); accord Eiseman v. State, 70 N.Y.2d 175 (1987)).

"[S]tatus as employees does not establish the requisite special relationship." Childers, 36 F. Supp. 3d at 311.  Generally, for Plaintiff to show a special relationship requires that they

provide evidence that "person making the representation held or appeared to hold unique or special expertise." Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 28 (S.D.N.Y. 2009).

Here, defendants are entitled to summary judgment with respect to Plaintiffs' claim for negligent misrepresentation because, in addition to failing to provide any evidence of false representations, Plaintiffs failed to produce any evidence that Pinto had any "special" status beyond that of "employee" that could provide a basis for negligent misrepresentation. Plaintiffs have not produced any evidence that any of the Defendants held unique or special expertise. Accordingly, summary judgment for defendants is appropriate.

## VIII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' AIDING AND ABETTING AND VICARIOUS LIABILITY CLAIMS AGAINST WRIGLEY

Finally, Plaintiffs allege that Wrigley is liable for each cause of action because she aided and abetted Pinto and CPI. Compl. at ¶704.

To establish liability for aiding and abetting under New York law, the Plaintiffs must show "(1) the existence of [an underlying tort]; (2) [the] defendant's knowledge of the [underlying tort]; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission." Bigio v. Coca-Cola Co., 675 F.3d 163, 172 (2d Cir. 2012) (internal citation omitted)  "[A]ctual knowledge is required to impose liability on an aider and abettor under New York law." Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014). "[C]onstructive knowledge" is insufficient to constitute the knowledge element of an aiding-and-abetting claim. Id. (quoting Oster v. Kirschner, 77 A.D.3d 51 (2010)).

Where Plaintiffs fail to prove actual knowledge but rely instead on evidence that the defendant "should have realized" or "had reason to suspect" the underlying tort, an aiding and

abetting claim will fail. Heinert v. Bank of Am. N.A., No. 20-0691, 2020 U.S. App. LEXIS 35733, at *3-8 (2d Cir. Nov. 13, 2020)(citing Nathel v. Siegal, 592 F. Supp. 2d 452, 469 (S.D.N.Y. 2008) ("Even where a bank was on notice of 'red flags' that indicated certain accounts may have been vehicles for fraudulent activity and referred the case to its internal fraud unit, the bank had only suspicions but not actual knowledge of the fraud."); Mazzaro de Abreu v. Bank of America Corp., 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (explaining that while patterns of bank transfers and low balances gave rise to inferences of fraud, they at most indicated constructive knowledge of a fraudulent scheme); In re Agape Litig., 773 F. Supp. 2d 298, 310 (E.D.N.Y. 2011) (commingling of investor funds showed at most constructive knowledge of fraud even where bank employees "actually saw" the account activity); see also MLSMK Inv. Co. v. JP Morgan Chase & Co., 431 Fed. App'x 17, 20 (2d Cir. 2011) (noting that "it is not unusual for money to be transferred into and out of investment accounts")).

"There must also be a 'nexus between the primary fraud, [the alleged aider and abettor's] knowledge of the fraud[,] and what [the alleged aider and abettor] did with the intention of advancing the fraud's commission . . . .'" Krys v. Pigott, 749 F.3d 117, 127-28 (2d Cir. 2014)(citing Franco v. English, 210 A.D.2d 630, 633, 620 N.Y.S.2d 156, 159 (3d Dep't 1994), abrogated on other grounds, Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 561 (2009).)

In that regard, "substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.), No. 18-cv-6658 (JSR), 2020 U.S. Dist. LEXIS 70416, at *78-79 (S.D.N.Y. Apr. 21, 2020) (quoting In re Sharp Int'l Corp., 403 F.3d 43, 50 (2d Cir. 2005). "And, the inaction of an

aider and abettor is actionable when the aider and abettor has an affirmative duty to act or has a fiduciary duty to plaintiff." Id. (citing Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 203 (S.D.N.Y. 2006)).

Here, as a preliminary matter, because Plaintiffs cannot prove any of the underlying torts, defendants are also entitled to summary judgment on their cause of action for aiding and abetting against Wrigley.

However, assuming arguendo that Plaintiffs provided evidence that created an issue of material fact with respect to any of their causes of action, the record is devoid of evidence that Wrigley had actual knowledge and substantially assisted in the underlying torts by Pinto and CPI. While the evidence unquestionably reflects that Wrigley assisted Pinto in caring for Joanne, there is no evidence that she did more than that. Plaintiffs attempt to demonstrate vicarious liability by alleging that "Wrigley was responsible for supervising Pinto and ensuring that he actually made the minimum three visits per week" (Compl. at ¶460) and "actually spent the five hours per visit to Joanne (including travel time) that he was charging for" (id. at ¶461), the record reveals otherwise. However, this allegation is starkly contradicted by the evidence, which reflects that as early as April 25, 2013, Bernard directly supervised Pinto's billing and spending, stating in an email to Pinto: "Pinto: I tried to leave my cousin, Cherie Wrigley, in charge of your efforts, but can no longer do so." SOF ¶32.

The evidence demonstrates that as early as July 17, 2013, Bernard's supervision of Pinto's billing (which is the basis of the alleged fraud) was to the exclusion of Wrigley. In an email dated July 17, 2013, Bernard instructed Pinto: "Esaun, [...] To confirm, you should make all future billing agreements with me., and only me." SOF ¶40. Pinto submitted all remaining invoices to Bernard and the record reflects Bernard's diligent review of these invoices. Id. at ¶35

There is absolutely no evidence that Wrigley owed a duty of supervision over Pinto nor that she could have had actual knowledge of any purported fraud without being a recipient of the invoices and having access, as Bernard did, to Joanne's bank accounts to verify all withdrawals.

Wrigley is therefore entitled to summary judgment on Plaintiffs' aiding and abetting claim.

### Respondeat Superior and Vicarious Liability for Wrigley

### A.      Respondeat Superior

In addition to aiding and abetting liability, Plaintiffs claim that Wrigley is liable for each of the aforementioned causes of action vicariously by virtue of respondeat superior and/or a principal-agency relationship.  Generally, an employer will be liable for its employee's negligence when (1) the employee has done something; (2) in furtherance of the employee's duties; (3) owed to the employer; and (4) where the employer is, or could be, exercising some control directly or indirectly over the employee's activities. See Matos v. Michele DePalma Enters., Inc., 160 A.D.2d 1163-64 (N.Y. App. Div., 3d Dep't 1990).  Control is an essential element of respondeat superior.  See Swierczynski v. O'Neill, 41 A.D.3d 1145, 1146 (N.Y. App. Div., 4th Dep't 2007).  Additionally, the doctrine of respondeat superior does not imply or impose vicarious liability on supervisors. See Connell v. Hayden, 83 A.D.2d 30, 50-51 (N.Y. App. Div., 2d Dep't 1981).

Here, no reasonable jury could find that Wrigley was Pinto's employer. While Wrigley offered her opinions on how to help Joanne in terms of what kind of treatment to provide her and at which treatment facility, it was Bernard who agreed to hire Pinto, oversee his billing and expenditures, pay Pinto, "instructed" Pinto, and eventually fire Pinto.

Bernard described retaining Pinto in a letter from Bernard to Linda Lee Babcock, a court-appointed visitor, dated September 22, 2014, in which he wrote: "Cherie and I arranged in 2013 for her advisor, Esaun Pinto, to attempt a "rescue" which involved bringing her to New Jersey, and closer to Esaun. She was committed to a mental institution involuntarily while in New Jersey, then transferred involuntarily to New York because it was easier for us to arrange for long-term care there." SOF ¶21.

Bernard's control over Pinto's billing and expenditures is evident from their correspondence.  In an email dated April 25, 2013 from Bernard to Pinto, Bernard wrote, "Mr. Pinto: I tried to leave my cousin, Cherie Wrigley, in charge of your efforts, but can no longer do so." SOF ¶32.  Similarly, in a July 17, 2013 email he wrote to Pinto, "Esaun, [...] To confirm, you should make all future billing agreements with me., and only me."  SOF ¶40.

In fact, Bernard was the *only* individual who had the authority to hire Pinto and pay him from the Estate because Bernard was the Executor of the Estate of Renata Black as well as Joanne's financial conservator.  Bernard memorialized his employer/employee relationship in an email dated September 4, 2014 in which he wrote to Pinto "you are working for me, in my capacity as financial conservator for Joanne, as trustee of trusts of which Joanne is the principal beneficiary, and as executor of the Estate of Renata Black." SOF ¶50.  In his September 22, 2014 letter to Babcock, Bernard identified Pinto as "Esaun Pinto (private investigator on our payroll)" Id. at ¶51.

Since Bernard, not Wrigley, was Pinto's employer, defendants are entitled to summary judgment with respect to the respondeat superior claim.

### B.     Vicarious Liability

Plaintiffs also claim that Wrigley is vicariously liable for Pinto's conduct as a principal.

Under New York law, "principals may be held liable for torts committed by their agents when such agents act within the scope of their agency." Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012) (internal citations omitted).  "New York common law provides that an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." Id. (citing N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001)).

Here, because there is no evidence that Wrigley exercised control over Pinto and that Pinto agreed to be subject to her control, summary judgment is appropriate in favor of defendant Wrigley with respect to the vicarious liability theory.

## CONCLUSION

For the reasons articulated above, defendants respectfully request the Court grant their motion for summary judgment, and for any other or further relief the Court deems just and proper.

Dated: New York, New York
          December 7, 2020

Respectfully submitted,

**Mancilla & Fantone, LLP**

By:   /s/ Robert M. Fantone
      Robert M. Fantone

By:   /s/ Andrew Mancilla
      Andrew Mancilla

*Attorneys for Defendants*

34