UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

SAMUEL HOY BLACK and BERNARD BLACK,

                              Plaintiffs,                        16-CV-430 (CBA) (ST)

           -against-

CHERIE WRIGLEY, ESAUN G. PINTO, SR., and
CPI INVESTIGATIONS INC.

                  Defendants.

---------------------------------------------------------------X


---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

---


**Mancilla & Fantone, LLP**
*Attorneys for Defendants*
**260 Madison Avenue, 22nd Floor**
**New York, New York 10016**
**P (646) 225-6686**
**F (646) 655-0269**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT IN REPLY ....................................................................................................... 5

I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL
       CLAIMS RELATED TO PINTO'S INVOICES (Plaintiffs' First, Third, Fourth,
       Sixth, Eleventh, Thirteenth, Fourteenth, and Fifteenth Causes of Action)...................... 5

       A.  Invoiced Expenses In The Amount Of $21,748.................................................... 6

       B.  $102,448 In Services Related To Visitation and Other Services ........................ 10

       C.  $8,625 In Services Performed During The Period From April 12-19, 2013....... 17

II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL
       CLAIMS RELATED TO PINTO'S BANK ACCOUNT WITHDRAWALS AND
       JOANNE'S SSDI BENEFITS (Plaintiffs' Second, Third, Fifth, Seventh, and Eighth
       Causes of Action)............................................................................................................. 18

III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL
       CLAIMS RELATED TO THE SO-CALLED "ADVANCE PAYMENT" FOR
       OCTOBER 2014 (Plaintiffs' Ninth and Twelfth Causes of Action) .............................. 24

IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL
       CLAIMS RELATED TO WRIGLEY'S PAYMENTS TO PINTO IN JULY AND
       SEPTEMBER 2014 (Plaintiffs' Fourth and Tenth Causes of Action) ........................... 26

V.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFFS' FIFTEENTH CAUSE OF ACTION: AIDING AND ABETTING
       AGAINST WRIGLEY.................................................................................................... 26

CONCLUSION...................................................................................................................... 30

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Allied Ir. Banks, P.L.C. v. Citibank, N.A.</u>,
   No. 03-cv-3748, 2015 U.S. Dist. LEXIS 88221 (S.D.N.Y. June 30, 2015) (Batts, J.).............. 8

<u>Anderson v. Liberty Lobby</u>, 4
   77 U.S. 242 (1986)..................................................................................................... 4

<u>Barrie House Coffee Co. v. Teampac, LLC</u>,
   No. 13-cv-8230, 2016 U.S. Dist. LEXIS 85527 (S.D.N.Y. June 30, 2016) (Briccetti, J.) ..... 3, 4

<u>Bell v. City of Topeka</u>,
   496 F. Supp. 2d 1182 (10th Cir. 2008) ................................................................. 5, 10

<u>Bigio v. Coca-Cola Co.</u>,
   675 F.3d 163 (2d Cir. 2012)................................................................................... 27, 29

<u>Brown v. Eli Lilly & Co.</u>,
   654 F.3d 347 (2d Cir. 2011)......................................................................................... 4

<u>Bruchman v. Standard Chtd. Bank, Pub. Ltd. Co.</u>,
   997 F. Supp. 481 (S.D.N.Y. 1998) ............................................................................. 9

<u>Casseus v. Verizon N.Y., Inc.</u>,
   722 F. Supp. 2d 326 (E.D.N.Y. 2010) ...................................................................... 26

<u>Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.</u>,
   No. 2:17-cv-1642, 2017 U.S. Dist. LEXIS 167207 (E.D.N.Y. Oct. 7, 2017) ........................ 25

<u>Conn. Indem. Co. v. 21st Century Transp. Co., Inc.</u>,
   186 F.Supp.2d 264 (E.D.N.Y. 2002) .......................................................... 12, 20, 21

<u>Duplantis v. Shell Offshore, Inc.</u>,
   948 F.2d 187 (5th Cir. 1991) ............................................................................. 5, 10

<u>Engstrom v. First Nat'l Bank</u>,
   47 F.3d 1459 (5th Cir. 1995) ...................................................................................... 3

<u>Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.</u>,
   93 N.Y.2d 584 (N.Y. 1999) ...................................................................................... 25

<u>Georgia Malone & Co v. Rieder</u>,
   19 N.Y.3d 511 (2012) ..................................................................................... 9, 23, 26

Goldfine v. Sichenzia,
   73 A.D.3d 854 (2d Dept 2010) ...................................................................... 9, 23, 26

Goldstein v. Bell (In re Normco, Inc.),
   No. 97-cv-4774, 1997 U.S. Dist. LEXIS 17673 (ND. Ill. October 30, 1997) (Williams, D.J.)  8

Good v. Presbyterian Hosp.,
   934 F. Supp. 107 (S.D.N.Y. 1996). ........................................................................ 27

Gray v. Town of Darien,
   927 F.2d 69 (2d Cir. 1991)...................................................................................... 22

Grumman Allied Indus. v. Rohr Indus.,
   748 F.2d 729 (2d Cir. 1984)................................................................................... 23

Heletsi v. Lufthansa German Airlines, Inc.,
   No. 99-cv-4793, 2001 U.S. Dist. LEXIS 22413 (E.D.N.Y. Dec. 18, 2001) (Johnson, Jr., J.).. 26

Hotel Constructors, Inc. v. Seagrave Corp.,
   574 F.Supp. 384 (S.D.N.Y. 1983) ......................................................................... 14

In re Chateaugay Corp.,
   10 F.3d 944 (2d Cir. 1993).................................................................................... 25

JHAC LLC v. Advance Entertainment, LLC,
   2020 N.Y. Misc. LEXIS 2597 (Sup. Ct. N.Y. Co. June 5, 2020) ............................................ 25

Kaikov v. Kaikov,
   No. 19-CV-2521, 2020 U.S. Dist. LEXIS 186409 (E.D.N.Y. Oct. 5, 2020)..................... 14, 25

Klayman v. Judicial Watch, Inc.,
   628 F. Supp. 2d 112 (D.D.C. 2009) ........................................................................ 9

Laugh Factory, Inc. v. Basciano,
   608 F. Supp. 2d 549 (S.D.N.Y. 2009) ...................................................................... 8

Leon v. Murphy,
   988 F.2d 303 (2d Cir. 1993)............................................................................... 4, 21, 30

Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P.,
   662 F. App'x 33 (2d Cir. 2016) .............................................................................. 16

Mallis v. Bankers Trust Co.,
   615 F.2d 68 (2d Cir. 1980)..................................................................................... 9

Merrill Lynch & Co. v. Allegheny Energy, Inc.,
    500 F.3d 171 (2d Cir. 2007)................................................................... 14

Net2Globe Int'l v. Time Warner Telecom of N.Y.,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003) ................................................... 4, 6

Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,
    269 F.3d 114 (2d Cir. 2001).................................................................. 5

Panix Promotions, Ltd. v. Lewis,
    2002 U.S. Dist. LEXIS 7176 (Jan 18, 2002) (Baer, D.J. ).................... 14, 25

Patterson v. Cty. of Oneida,
    375 F.3d 206 (2d Cir. 2004).................................................................. 4

Rinieri v. Scanlon,
    254 F. Supp. 469 (S.D.N.Y. 1966) ........................................................ 5

Rojas v. Roman Catholic Diocese of Rochester,
    660 F.3d 98 (2d Cir. 2011).................................................................... 16

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997).................................................................... 9, 23

Scott v. Harris,
    550 U.S. 372 (2007).............................................................................. 15

Scotto v. Almenas,
    143 F.3d 105 (2d Cir. 1998).................................................................. 7

Smith v. N.Y. & Presbyterian Hosp.,
    440 F. Supp. 3d 303 (S.D.N.Y. 2020) ................................................... 12, 20

Smith v. Smith,
    No. 13-cv-1635, 2014 U.S. Dist. LEXIS 125371 (E.D.N.Y. Sep. 5, 2014) (Feuerstein, D.J.)... 9

Starke v. Squaretrade Inc.,
    913 F.3d 279 (2d Cir. 2019).................................................................. 25

Turner v. International Brotherhood of Teamsters, etc.,
    604 F.2d 1219 (9th Cir. 1979) .............................................................. 3

United States v. Hee,
    No. 14-cr-00826, 2015 U.S. Dist. LEXIS 54971 (D. Haw. April 27, 2015) (Mollway, C.J.).... 8

Universitas Education, LLC v. Nova Group, Inc.,
    513 Fed. Appx. 62 (2d Cir. 2013)............................................................................................ 6

Wyler v. United States,
    725 F.2d 156 (2d Cir. 1983)........................................................................... 4, 29, 30

**Statutes**

Fed. R. Civ. P. 56(e) ............................................................................................. 5, 10

## INTRODUCTION

Until now, Plaintiffs have enjoyed the friendly legal standard afforded to litigants during the early stages of a lawsuit.  That legal standard required the Court to assume the truth of Plaintiffs' conclusory allegations, such as: "Pinto has obtained debit cards for Joanne and used them to steal money from the accounts; diverted Social Security Disability Insurance ("SSDI") payments to himself; and submitted, and received payment for, exaggerated and false bills for expenses and services related to Joanne."  Compl. ¶16.  Such conclusory allegations are repeated throughout Plaintiffs' complaint.  However, a review of Plaintiffs' opposition confirms what the Defendants have known since the beginning of this case -- that the Plaintiffs have absolutely no evidence to support their allegations.

Common sense suggests that during the 5+ years this case has been pending the Plaintiffs would have deposed the alleged victim of Defendants' theft, Joanne Black, to confirm that the Defendants actually stole money from her.  However, the Plaintiffs chose not to depose Joanne, likely because they knew her testimony would confirm that the Defendants never took any money from her.  Plaintiffs also knew that Joanne would attest to the accuracy of Pinto's invoices with regard to the number of times Pinto visited her.

This is exactly what Joanne's declaration states.  Joanne specifically declares, under oath, that she reviewed Pinto's invoices and that Pinto visited her exactly as described in the invoices. This is based on her personal knowledge, having been present when Pinto visited her.  Joanne states that she reviewed all of the disputed ATM withdrawals contained in Plaintiffs' pleadings, and that Pinto never retained any of that money for his own benefit.  This is based on her personal knowledge, having directed Pinto to make the withdrawals and use the funds according

1

to her wishes.  Pinto's deposition testimony and declaration, also based on personal knowledge, corroborate all of Joanne's sworn statements.

However, without citing one case in support, Plaintiffs argue that it is incumbent upon Defendants to further prove they did not commit fraud by corroborating Joanne and Pinto's sworn statements with receipts and other documentary evidence.  Plaintiffs' entire opposition can be boiled down to the following speculative assertions: (i) Pinto must stolen the money he withdrew from Joanne's accounts because he did not provide any documentation of what he did with the funds, and (ii) Joanne's declaration must be stricken because it contains hearsay and she is mentally ill, or, alternatively, her statements must be subject to cross-examination at trial.

Unfortunately for Plaintiffs, this is not how summary judgment works.  They had more than 5 years to question Joanne under oath to determine what she knows and does not know.  She is obviously a central witness in light of the allegations in the Complaint.  Plaintiffs chose not to do so.  Plaintiffs cannot now use their deliberate strategy of avoiding her deposition to shield them from her declaration in support of summary judgment.

Common sense would suggest that the Plaintiffs would have subpoenaed witnesses and records from the healthcare facilities in which Joanne had resided to explain the visitation procedures and obtain evidence to support the allegation that Pinto did not actually visit Joanne as often as he claimed.  They chose not to do that either.  In fact, the Plaintiffs did not issue one subpoena or depose one non-party witness to support their conclusory allegations -- and the party depositions they conducted focused almost entirely on a different lawsuit.[1]

Through the sworn statements of Joanne and Pinto, as well as ample documentary evidence, the Defendants have more than sustained their burden of establishing their entitlement

---

[1] Discovery in this case was conducted jointly with the case of <u>Black et al. v. Dain et al</u>. (16-cv-01238), currently pending before Your Honor.

to summary judgment.  The Court is no longer required to assume the truth of Plaintiffs' conclusory assertions; rather the Plaintiffs are required to rebut the Defendants' evidence with admissible evidence of their own.  As the Court will see below, they failed to do this.

Finally, this introduction would be incomplete without addressing the unsupported inflammatory language riddled throughout Plaintiffs' submission.  There is an old legal aphorism that goes: "If you have the facts on your side, pound the facts.  If you have the law on your side, pound the law.  If you have neither on your side, pound the table."  Plaintiffs' entire submission constitutes table pounding in the form of repeated name-calling pertaining to Pinto.  We ask the Court to disregard Plaintiffs' inflammatory and unsupported disparagement of Pinto, and remind the Court that the only party in this action that has been adjudged guilty of theft is Plaintiff Bernard Black.

## **LEGAL STANDARD**

When the movant submits an adequately supported motion for summary judgment under Rule 56, the burden of proof falls to the opposing party, who must come forward with facts, not allegations, to controvert the moving party's case. Turner v. International Brotherhood of Teamsters, etc., 604 F.2d 1219, 1228 (9th Cir. 1979).

A defendant who moves for summary judgment may rely on the absence of evidence required to support the essential elements of the plaintiff's case. Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).  "If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate." Barrie House Coffee Co. v. Teampac, LLC, No. 13-cv-8230, 2016 U.S. Dist. LEXIS 85527, at *18-19 (S.D.N.Y. June 30, 2016) (Briccetti, J.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"The opposing party's showing of a genuine dispute must be grounded in concrete evidence sufficient to support a reasonable jury's rendering a verdict in his favor, and 'the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient.'" Net2Globe Int'l v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 443 (S.D.N.Y. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

"If the non-moving party submits 'merely colorable' evidence, summary judgment may be granted." Barrie House Coffee Co., 2016 U.S. Dist. LEXIS 85527, at *18-19 (citing Anderson, 477 U.S. at 249-50). Allegations by a plaintiff are insufficient to defeat a defendant's summary judgment motion where such "allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants [...] " Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

"Rule 56(e) states that when a motion for summary judgment is made and supported as provided in this rule, … the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Patterson v. Cty. of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (internal citations and quotations omitted). "An affidavit [...] which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight." Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983).

The non-moving party may not "rely simply on [...] contentions that the affidavits in support of the motion are incredible." Wyler, 725 F.2d at 160. "It is also clear that the opposing

party is not entitled to have the motion denied on the mere hope that at trial he will be able to discredit movant's evidence." Rinieri v. Scanlon, 254 F. Supp. 469, 474 (S.D.N.Y. 1966).

In deciding a summary judgment motion, a district court considers "only admissible evidence." Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 269 F.3d 114, 123 (2d Cir. 2001). A nonmoving party, when opposing summary judgment motion, may not use unauthenticated documents. Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991); Bell v. City of Topeka, 496 F. Supp. 2d 1182, 1185 (10th Cir. 2008) (Personal affidavit submitted by plaintiff's counsel concerning documents was insufficient to provide authentication, pursuant to Fed. R. Civ. P. 56(e), when counsel was not author of documents and had no personal knowledge of facts contained in documents.)

## ARGUMENT IN REPLY

### I.

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL CLAIMS RELATED TO PINTO'S INVOICES
**(Plaintiffs' First, Third , Fourth, Sixth, Eleventh, Thirteenth, Fourteenth, and Fifteenth Causes of Action)**

Plaintiffs' causes of action related to Pinto's invoices are as follows: Fraud (First), Fraudulent Misrepresentation (Third), Unjust Enrichment (Fourth), Money Had and Received (Sixth), Conversion (Eleventh), Constructive Fraud (Thirteenth), Negligent Misrepresentation (Fourteenth), and Aiding and Abetting (Fifteenth).  All of these causes of action are based upon Pinto's alleged "inflated invoices," in which Plaintiffs allege that Pinto misrepresented his expenses and services rendered.  See Compl. at 70, ¶A.

Plaintiffs allege a total inflated amount of **$132,821**, broken down into three categories: (A) expenses that Pinto billed for, but did not actually incur in the amount of **$21,748**; (B) the frequency and duration of visits to Joanne's healthcare facilities for which Pinto billed for, but

did not actually perform in the amount of **$102,448**; and (C) overbilling for hours worked during April 12-19, 2013 in the amount of **$8,625.**

It is important to note at the outset that Plaintiffs' causes of action related to Pinto's invoices make up the overwhelming majority of Plaintiffs' alleged damages.  If these claims fail, the remainder of Plaintiffs' claims for damages will not satisfy the jurisdictional threshold amount required to sustain a diversity action in this Court ($75,000, exclusive of fees and interest). See e.g. Universitas Education, LLC v. Nova Group, Inc., 513 Fed. Appx. 62, 63 (2d Cir. 2013).

### A.    Invoiced Expenses In The Amount Of $21,748

During the 17 month period from April 2013 to September 2014, Pinto's invoices requested reimbursement of expenses in the amount of $21,748.  Plaintiffs allege that Pinto did not actually incur such expenses. Compl at ¶595 and p.50.

The following evidence establishes that Pinto actually incurred those expenses: (1) Pinto's invoices (Fantone Decl., Ex. D); (2) Pinto's sworn statements (Pinto Decl. at  ¶2); (3) email correspondence between Pinto, Bernard, and Wrigley (see, e.g., Fantone Decl., Ex. I at 1)); and (4) Joanne's declaration stating that Pinto spent at least $12,000 on motels, clothing, food, storage, and shopping for Joanne, for which Bernard reimbursed Pinto (Joanne's Decl. at ¶12). The burden thus shifted to Plaintiffs to raise a "genuine dispute [...] grounded in concrete evidence sufficient to support a reasonable jury's rendering a verdict in his favor." Net2Globe Int'l, 273 F. Supp. 2d at 443.

Rather than cite to any "concrete evidence", Plaintiffs argue that there is an issue of fact with respect to the legitimacy of Pinto's expenses because: (1) Pinto did not produce any receipts

for those expenses (Opp.[2] at 8, 11, 13, 14, 18, 22, 27); (2) the expenses noted in Pinto's invoices are "in round numbers" (id. at 8, 14, 18, 22, 27); and (3) Joanne's sworn statements are not based on personal knowledge. Id. at 7. In support of these arguments, Plaintiffs do not cite to any evidence in the record.

In other words, Plaintiffs offer absolutely no evidence to rebut the documentary evidence and sworn statements of Pinto and Joanne, which are based on personal knowledge of the expenses Pinto incurred. Pinto Dec. at ¶¶1, 2, 4; Joanne Decl. at ¶¶1, 12.  Summary judgment is appropriate where "allegations are not substantiated in any way and most are directly contradicted by the affidavits of those who would have first-hand knowledge of the incidents in question." Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

Instead, Plaintiffs attempt to improperly shift the burden of proof to Defendants by asserting that Defendants have not produced any receipts to prove that Pinto incurred the disputed expenses. Opp. at 8, 11, 13, 14, 18, 22, 27.  Specifically, Plaintiffs argue: "Pinto's bills are self-evidently false because not one of them is supported by any documentary evidence," and Pinto's lack of receipts "fully satisfies Plaintiffs' burden of presenting evidence that Pinto's reported expenses were false." Id. at 8.

Plaintiffs arguments are meritless.  Plaintiffs fail to establish that Pinto had an independent obligation to retain receipts.  In fact, in an email dated May 19, 2015 to Pamela Kerr, the forensic accountant charged with investigating Bernard's misconduct in Colorado, Bernard admitted: "**I did not require Esaun Pinto to provide backup for his claims on expenses.**" Mancilla Decl., Ex. A at 2[3] (emphasis added).

---

[2] Citations to "Opp." reference Plaintiffs' opposition to Defendants' motion for summary judgment, dated February 11, 2021.
[3] Bernard's responses to Kerr's questions are within the body of Kerr's email itself and are identifiable by virtue of being indented, boldened, and begin with "**BSB:**"

Even if Pinto had an obligation to document expenses, the mere lack of receipts is insufficient to raise an issue of fact with respect to fraudulent intent.  United States v. Hee, No. 14-cr-00826, 2015 U.S. Dist. LEXIS, 54971*16-17 (D. Haw. April 27, 2015) (Mollway, C.J.) (Ruling that a criminal defendant had not raised a "contested issue of fact" to merit a hearing because "by themselves, the lack of receipts and closing of deals with handshakes are not sufficient badges of fraud."); see also, Goldstein v. Bell (In re Normco, Inc.), No. 97-cv-4774, 1997 U.S. Dist. LEXIS 17673, *11-12 (ND. Ill. October 30, 1997) (Williams, D.J.) ("Furthermore, [the party's] lack of complete receipts for its expense claims does not prove fraud by the purchaser.").

Unsurprisingly, Plaintiffs do not cite one case in support of their proposition that the mere lack of documentation, by itself, is sufficient to overcome multiple sworn statements attesting to the accuracy of Pinto's expense reports.  This is particularly concerning with respect to Plaintiffs' fraud claims, which require proof by clear and convincing evidence. See Allied Ir. Banks, P.L.C. v. Citibank, N.A., No. 03-cv-3748, 2015 U.S. Dist. LEXIS 88221, at *32 (S.D.N.Y. June 30, 2015) (Batts, J.) (applying clear and convincing evidence standard to claim of fraud at summary judgment stage) (citing Laugh Factory, Inc. v. Basciano, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009)).

Further, no reasonable jury can conclude Bernard reasonably relied on Pinto's lack of receipts in reimbursing Pinto.  If Pinto's reported expenses are "self-evidently false" as Plaintiffs argue (Opp. at 18), then how does Plaintiff expect any reasonable juror to conclude that Bernard, the self-proclaimed "genuine expert in finance" (Bernard's Decl., Ex. P at 5) reasonably relied on them when he paid them?  This is especially true since it is undisputed that in 2013 and 2014 Bernard carefully reviewed the invoices and expense requests before reimbursing Pinto. Fantone

Decl., Ex. I, at 3-7; see also Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ("[I]f the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.") (internal citations and quotations omitted); Mallis v. Bankers Trust Co., 615 F.2d 68, 81 (2d Cir. 1980) (Reasonable reliance entails a duty to investigate where the "plaintiff was placed on guard or practically faced with the facts."); Bruchman v. Standard Chtd. Bank, Pub. Ltd. Co., 997 F. Supp. 481, 489-90 (S.D.N.Y. 1998).

With respect to Plaintiffs' unjust enrichment and money had and received claims based on these expenses (respectively Plaintiffs' Fourth and Sixth causes of action), absent proof of fraud, these are barred by the doctrine of account stated. Def. MOL[4] at 16, 19.  Plaintiffs also cannot establish that Pinto improperly obtained money belonging to Plaintiffs or that Pinto was otherwise enriched.   Georgia Malone & Co v. Rieder, 19 N.Y.3d 511, 516 (2012); Goldfine v. Sichenzia, 73 A.D.3d 854, 854 (2d Dept 2010).

Plaintiffs' failure to cite any evidence to establish that Pinto did not actually incur the expenses also precludes their Thirteenth cause of action for conversion. Smith v. Smith, No. 13-cv-1635, 2014 U.S. Dist. LEXIS 125371, at *21-22 (E.D.N.Y. Sep. 5, 2014) (Feuerstein, D.J.) (a key element of conversion is plaintiff's possessory right or interest in the property).

In sum, Plaintiffs' mere belief that the expenses are fraudulent is insufficient to deny Defendants summary judgment. See Klayman v. Judicial Watch, Inc., 628 F. Supp. 2d 112, 158-59 (D.D.C. 2009) (Plaintiff's mere belief that invoices were fraudulent for various reasons does not constitute evidence and is insufficient to demonstrate the invoices are in fact fraudulent).

---

[4] Citations to MOL reference Defendants' memorandum of law in support of summary judgment, dated December 7, 2020 (D.E. 92).

For these reasons, Defendants are entitled to summary judgment on Plaintiffs' claims related to Pinto's expenses in the amount of $21,748 (Plaintiffs' First, Third, Fourth, Sixth, Eleventh, Thirteenth, and Fourteenth causes of action).

### B.   $102,448 In Services Related To Visitation and Other Services

The following evidence establishes that Pinto performed the services he billed for: (i) Joanne's sworn statements that Pinto's invoices are accurate (Joanne Decl. at ¶9); (ii) Joanne's sworn statements regarding Pinto's visitation and other services Pinto performed for Joanne (id. at ¶8); (iii) Pinto's declaration stating his invoices are accurate (Pinto Decl. at ¶¶2, 3); (iv) Pinto's invoices, which reflect a flat billing rate starting in January 2014 (Fantone Decl. Ex. D at 23-31); and (v) email correspondence showing Bernard was aware that Pinto was visiting Joanne only two times a week starting in February 2014. Fantone Decl. Exs. L, M and P.

Again, rather than offering "concrete evidence" that Pinto inflated his bills, Plaintiffs attempt to rebut the evidence in the record by arguing: (i) Joanne's sworn statements are not credible (Pls. Resp. SOF at ¶¶43,75); (ii) Joanne's sworn statements are not based on first-hand knowledge (id.); (iii) Joanne's declaration should be stricken because Joanne is mentally ill (Opp. at 4; Pls. Resp. SOF at ¶¶43,75); Pinto did not document his visits properly (Opp. at 4, 9); (iv) Visitor Logs beginning on May 22, 2014[5] prove Pinto did not visit three times a week as he allegedly "promised." Opp. at 11; Pls. Resp. SOF at ¶68.  Additionally, Bernard's 11th hour declaration attempts to dispute the unambiguous content of the 2014 emails between Pinto and

---

[5] Plaintiffs' proffered visitor logs are not admissible and should be stricken because they are not properly authenticated pursuant to Fed. R. Civ. P. 56(e) in that they are only attached to the declaration of Bernard who was not the author of the documents and had no personal knowledge of the facts contained in the documents. Duplantis, 948 F.2d at 192; Bell,, 496 F. Supp. 2d at 2007 (Personal affidavit [...] concerning documents was insufficient to provide authentication, pursuant to Fed. R. Civ. P. 56(e), when [affiant] was not the author of documents and had no personal knowledge of facts contained in documents).

Bernard by claiming that Pinto agreed (via telephone) to continue to visit Joanne three times a week throughout 2014. Bernard Decl. at ¶17.

Plaintiffs' arguments lack merit.  Pinto's representations are broken up into two categories: (i) representations contained in Pinto's invoices, which relate to Pinto's visits in 2013; and (ii) other representations, which relate to Pinto's visits in 2014.  With respect to representations contained in the invoices, Pinto only describes the frequency of his visits to Joanne's healthcare facilities and total hours worked up to December 2013.[6] See Fantone Decl., Ex. D.  Joanne's sworn declaration states that the representations contained in the invoices regarding Pinto's visits were accurate.  Joanne Decl. ¶8, 9; SOF ¶¶67; see also id. at ¶¶42, 44. These statements are obviously based on personal knowledge (id. at ¶2) because Joanne was present for each of Pinto's visits.

Plaintiffs do not provide any evidence to counter Joanne's sworn statements; nor do they even address this argument in their opposition other than to state that Pinto did not provide documentation (other than the invoices) to prove his visits occurred.  See Opp. a 9-12.  The only place Plaintiffs make any attempt to dispute Joanne's sworn statements is in their response to Defendants' Statement of Facts, in which they ask the Court to ignore Joanne's declaration because:

> Joanne's memory: (i) is unreliable, and needs to be tested through cross-examination; (ii) is inconsistent with hospital records, for the period from May 22 through October 23, 2014, for which they are available; and (iii) contradicts the assertion in Defendants' Memorandum of Law (Def. MoL) at 8 that Pinto reduced visit frequency in 2014 and that 'Bernard agreed to Pinto's reduction in visits'; and (iv) contradicts asserted fact 46.

---

[6] As explained below, Pinto's invoices after December 2013 do not contain any representations regarding the number of visits or hours because Pinto began charging a flat rate.

Pls' Resp. SOF at ¶44 (citing Bernard Decl. at ¶¶14-19 and at Exs. A and B); see also Pls. Resp. SOF at ¶67.

Plaintiffs' arguments are misplaced for two reasons.  First, Plaintiffs cannot rely upon speculative assertions that Joanne's memory is "unreliable," especially in light of their decision not to depose her.  Smith v. N.Y. & Presbyterian Hosp., 440 F. Supp. 3d 303, 333-34 and n.5 (S.D.N.Y. 2020); Conn. Indem. Co. v. 21st Century Transp. Co., Inc., 186 F .Supp.2d 264, 276 (E.D.N.Y. 2002) ("[Defendant] has offered no justification whatsoever for failing to depose [the witnesses] previously, and discovery in this case has already closed. [Defendant] cannot avoid summary judgment simply because it chose not to depose these two obviously important witnesses prior to the close of discovery.  Simply put, [defendant] has elected to belittle the evidence submitted by [plaintiff], instead of offering any evidence on its own [...] This is insufficient -- [defendant] cannot simply rest on the mere denials of the facts asserted by [plaintiff].")  (internal quotations and ellipses omitted).

There is no evidence on the record to establish that Joanne lacks capacity to submit a declaration.  Joanne's declaration states that she has been medically compliant since 2014, and has achieved complete remission since that time. Joanne Decl. ¶6.  Plaintiffs do not cite any admissible evidence to establish that Joanne lacks capacity, or that any illness she suffers from affects her memory or her ability to relate facts based upon her memory.  Plaintiffs were free to explore these issues by deposing Joanne during the 5+ years this case has been pending.  They failed to do so. Id.

Second, Plaintiffs' remaining arguments miss the point.  Pinto's invoices only contain representations pertaining to his frequency and duration of visits in 2013.  After such period, Pinto's invoices do not contain any representations regarding visits to Joanne because he began

charging a flat rate (discussed below). Thus, Joanne's representation that Pinto's invoices are accurate does not even pertain to the Visitation Logs, which evidence visitation activity starting in May 2014. Bernard Decl. at Ex. B.

Nor does Joanne's statement that the invoices are accurate contradict her assertion that Pinto began to visit less in 2014 because, again, her statement regarding the invoices' accuracy pertains to a period of time prior to 2014.  For the same reason, Joanne does not contradict Defendants' Statement of Facts at 46, or Defendants' memorandum of law in support of summary judgment.  Plaintiffs' failure to understand the actual representations contained in Pinto's invoices renders their arguments faulty.

For these reasons, the Court must dismiss all claims related to Pinto's allegedly unperformed visitation services in 2013.

With respect to services in 2014 when Pinto was charging a flat rate, Plaintiffs cannot raise a material issue of fact.  As stated above, Pinto's invoices during this time do not contain any representations as to the frequency and duration of Pinto's visits to Joanne.  Instead, Plaintiffs claim that Pinto's allegedly false representations occurred during a phone conversation, in which Pinto promised to continue to visit Joanne at least three times per week after switching to a flat rate. Opp. at 10.

Plaintiffs' arguments lack merit for two reasons.   First and foremost, Bernard asserts in his declaration that Pinto "promised" to visit Joanne three times a week in 2014, but failed to do so.  Bernard Decl. ¶¶20, 86; see also Opp. at 10 ("Pinto (1) made specific promises to perform services, (2) did not perform as promised[...]").  This is the very type of forward-looking statement that cannot be the basis of Plaintiffs' fraud claims (First, Third, and Thirteenth causes of action), negligent misrepresentation claim (Fourteenth cause of action), money had and

received claim (Sixth cause of action), or conversion claim (Eleventh cause of action). See Hotel Constructors, Inc. v. Seagrave Corp., 574 F.Supp. 384, 387 (S.D.N.Y. 1983) ("The mere failure to keep contractual promises of future acts will not sustain an action for fraud."); Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987) ("Promises of future conduct are not actionable as negligent misrepresentations."); Panix Promotions, Ltd. v. Lewis, 2002 U.S. Dist. LEXIS 7176 SDNY 2002 *9 (Jan 18, 2002) (Baer, D.J. ) (dismissing money had and received claim because there was an oral contract covering the subject matter involved."); Kaikov v. Kaikov, No. 19-CV-2521 (LDH) (RER), 2020 U.S. Dist. LEXIS 186409, at *38 (E.D.N.Y. Oct. 5, 2020) ("an action for conversion cannot lie where damages are merely sought for breach of contract.") (citations and quotations omitted).

In fact, Plaintiffs admit this in their opposition, stating: "Under New York law, a plaintiff may therefore maintain parallel contract and tort actions where the allegations involve **misstatements and omissions of present facts, not contractual promises regarding prospective performances**." Opp. at 11 (emphasis added) (quoting Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007).

In light of Plaintiffs' admissions, there are no material issues of fact with respect to Pinto's "promises" to visit Joanne in 2014. Accordingly, Defendants are entitled to summary judgment on all of Plaintiffs' related claims.

Second, the email evidence establishes that Bernard was well aware that Pinto had reduced his visits to twice a week starting in 2014. Specifically:

> November 17, 2013: Bernard sent an email to Pinto stating:
>
> "Esaun: [...] Cherie and I think that once Joanne is moved, your visits can be cut back in frequency, initially to twice per week. I understand from Cherie that you agree with this plan." Fantone Decl., Ex. L at 11; SOF at ¶45.

> February 19, 2014: Pinto sent an email to Bernard stating:
>
> "I have reduced my visits to twice a week on most weeks however sometimes things come up and I am needed. I am think moving forward a flat rate may be less of a hassle for both of us [...] I purpose [sic] a rate of $8k per month. This should put you in a more comfortable operating range." Fantone Decl., Ex. M at 2; SOF at ¶47.
>
> September 29, 2014: Pinto sent an email to Bernard stating:
>
> "I will continue to visit her at least twice a week and keep you updated as much as I can." Fantone Decl., Ex. P at 3.

The email correspondence in this case directly contradicts Bernard's declaration. Bernard asserts that "in late 2013" Bernard negotiated "a flat rate of $8,000 per month for the same 3 weekly visits," (Bernard Decl. at ¶14) and that "Pinto proposed in February 2014 to reduce his visit rate to twice per week, without reducing the $8,000 monthly fee." Id. at ¶17. Bernard then states that he objected to such arrangement. Id.

Bernard's assertions are directly contradicted by the February 19, 2014 email, in which Pinto states that had already reduced his visit rate to "twice a week," and in which he proposes a flat rate of $8,000 moving forward. Fantone Decl., Ex. M at 2. Thus, contrary to Bernard's declaration, Pinto and Bernard had not agreed to any flare rate in November 2013. Id. Also contrary to Bernard's declaration, Pinto had already informed Bernard that he was reducing his visits to twice a week **prior to** establishing the $8,000 monthly flat rate. Id.

In light of the emails, no reasonable juror could conclude that Bernard reasonably believed that Pinto was seeing Joanne three times a week in the weeks leading up to that February 9th email and for the remainder of 2014. See Scott v. Harris, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by record, so that no reasonable jury could believe it, court should not adopt that version of facts

for purposes of ruling on motion for summary judgment."); see also Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P., 662 F. App'x 33, 35 (2d Cir. 2016) ("Given the overwhelming documentary evidence to the contrary, the District Court rightly found that [plaintiff's] affidavit is so blatantly contradicted by the record evidence that no reasonable jury could believe its version of events."); Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 103 (2d Cir. 2011) (summary judgment properly granted to defendants where plaintiff "relied almost entirely on her own testimony," which was contradicted by "contemporaneous letters and meeting notes").

Third, Bernard's visit rate calculation in his declaration (Bernard Decl. at ¶¶14-18) is contradicted by the record because it completely ignores the additional services Pinto performed for Joanne.  Joanne's declaration explains that: "I called Esaun at least 3 times per day on the phone, and spoke to him for hours each day.  He also performed several tasks on my behalf, including meeting with healthcare professionals regarding my condition and care plan, going to the bank, going shopping for me, and taking care of other tasks if anything else came up." Joanne's Decl. at ¶8.

Plaintiffs attempt to refute these facts without citing any evidence, stating: "How often Joanne typically called Pinto is not known to plaintiffs. That she spoke to Pinto for multiple hours a day is denied as implausible and not supported by phone records."  Pls' Resp. SOF at ¶42. Without any citation, it is unknown which "phone records" Plaintiffs are referring to, especially since Plaintiffs never obtained phone records from Joanne or Pinto during discovery.

For these reasons, Defendants are entitled to summary judgment on Plaintiffs' claims related to Pinto's allegedly unperformed visitations (Plaintiffs' First, Third, Sixth, Eleventh, Thirteenth, and Fourteenth causes of action).

**C.      $8,625 In Services Performed During The Period From April 12-19, 2013**

The following evidence establishes that Pinto did not bill for unperformed services during the period from April 12-19, 2013: (i) Joanne's declaration stating that Pinto's invoices are accurate and that Pinto and his team were with her for 24 hours a day during the disputed period (Joanne's Decl. at ¶7); (ii) Pinto's declaration stating the same (Pinto Decl. at ¶¶2, 3); and (iii) Pinto's deposition testimony. Pinto Dep. at 42:6-17 (attached as Ex. M to Bernard Decl.)

Plaintiffs offer nothing to challenge this evidence.  Instead they argue that the billing is fraudulent on its face because it is not "plausible" and "[i]t is self-evident that billing for 153 consecutive hours of work is evidence of fraud." Opp. at 14.

However, it is undisputed that Pinto and his team were working remotely and were responsible for Joanne 24 hours a day during this period.[7]  Joanne's Decl. at ¶7; Pinto Decl. at ¶¶2, 3; Pinto Dep. at 42:6-17 (attached as Ex. M to Bernard Decl.).  Plaintiffs do not point to any agreement with Defendants, or any other authority, to establish that billing 24 hours a day under such circumstances was unwarranted.

Plaintiffs' claim that an invoice for 153 consecutive hours is fraudulent on its face is nothing more than a last-ditch effort to compensate for their lack of evidence.  Were this true, that such an invoice was self-evidently fraudulent, no jury could ever conclude that Bernard, the self-proclaimed "financial expert," would have reasonably relied on such a facially fraudulent invoice and paid it as he did.  Put another way, if the Court agrees with Plaintiff's argument, it renders the "reasonable reliance" element of Plaintiffs' fraud claims unprovable at trial.

---

[7] Plaintiffs' assertion that Pinto "effectively imprisoned" Joanne in a New Jersey motel (Pls' Resp. SOF at ¶26) is conclusory and does not cite to any admissible evidence besides Pinto's invoices, which do not support Plaintiffs' assertion.

Accordingly, defendants are entitled to summary judgment on causes of action related to Pinto's services performed during April 12-19, 2013. (Plaintiffs' claims for fraud (First, Third and Thirteenth cause of action), negligent misrepresentation (Fourteenth cause of action), money had and received (Sixth cause of action), conversion claim (Eleventh cause of action).

**II.**

**<u>DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL CLAIMS RELATED TO PINTO'S BANK ACCOUNT WITHDRAWALS AND JOANNE'S SSDI BENEFITS</u>**
**(Plaintiffs' Second, Third, Fifth, Seventh, and Eighth Causes of Action)**

Plaintiffs claim that Pinto was compensated both via his alleged personal retention of withdrawals from Joanne's bank accounts (including SSDI funds) as well as through his billing to Bernard.  However, Plaintiffs cannot establish that Pinto retained any of the disputed funds.

The following evidence on the record establishes that all funds withdrawn from Joanne's bank accounts were not retained by Pinto, but instead were spent at Joanne's direction or safeguarded from Bernard in a lockbox: (i) Joanne's sworn declaration stating that Joanne reviewed all of the disputed withdrawals and that Joanne directed Pinto to either spend the disputed funds or safeguard them from Bernard (Joanne Decl. at ¶¶11-14); (ii) Pinto's sworn declaration stating that he never retained any of Joanne's SSDI funds or other funds from Joanne' accounts for his personal benefit  (Pinto Decl. at ¶4); and (iii) Pinto's deposition testimony describing the lockbox he and Joanne used to safeguard Joanne's money from Bernard.  <u>Id</u>. at 262:4-263:13.  In light of this evidence, the burden then shifted to Plaintiffs to offer evidence that Pinto personally retained (or "stole") the disputed funds.

Plaintiffs do not cite to any admissible evidence; rather they argue: (i) the Court must ignore Joanne's declaration because it is not based on personal knowledge and she is mentally ill

(Opp. at 15-16; Pls' Resp. SOF at ¶¶77-79); and (ii) Pinto has not produced "any records as to where he placed the cash he withdrew or how he used it." Opp. at 15.

Plaintiffs fail to meet their burden.  With respect to Joanne's mental illness, as stated above, the record is devoid of any evidence to establish that Joanne lacks capacity, and Plaintiffs' failed to depose Joanne regarding her capacity.

With respect to Joanne's personal knowledge, Plaintiffs assert that Joanne "had no way of verifying that Pinto indeed placed the funds he withdrew from her bank accounts in a 'safe location.'" Id. at 16 (citing Bernard Decl. at Ex. A. at response 12).  Exhibit A to Bernard's declaration is Pinto's response to Plaintiffs' first request for documents, which states that he does not have documentation regarding the use of Joanne's SSDI funds. Id. at p.7.  This does not counter Joanne's sworn statement establishing that she has personal knowledge that Pinto did not retain any disputed funds for his benefit because Joanne directed Pinto to expend the funds for her needs or place them in a safe location. Joanne Decl. ¶¶11-14.

Plaintiffs urge the Court to subject Joanne to cross-examination where they contend it will become clear that Joanne does not have personal knowledge that Pinto never retained any of the disputed funds.  Opp. at 16; Pls' Resp. SOF ¶¶77-79.  They even provide questions they have for Joanne regarding her personal knowledge of Pinto's handling of her funds.  Id. at 15-16 ("Which funds is Joanne talking about here? How much? Taken from where? When? Placed in which 'safe location'? A bank account? Which account, in whose name? Where are the records that such 'safe location' ever existed? When did Pinto make Joanne 'aware' of the massive amounts he withdrew from her Chase and Wells Fargo accounts and placed in this safe location? When and how were the funds returned to Joanne?").

However, Plaintiffs had ample opportunity to depose Joanne and ask her these questions. They cannot now complain that she lacks personal knowledge because her declaration does not answer questions they chose not to ask her during the discovery process.  Smith, 440 F. Supp. 3d at 333-34 ("[Plaintiff] had the opportunity to depose [the witness] and chose not to do so.  As a result, [plaintiff] cannot rely on her conclusory assertions [.] [Plaintiff ...] cannot use her decision not to depose [the witness] as a shield from the affidavit, especially while failing to cite any conflicting evidence of her own."); Conn. Indem. Co.,186 F. Supp. 2d at 276.

The same is true of Pinto, who Plaintiffs did depose, but failed to ask any pertinent questions of.  For example, **Pinto's counsel** elicited the following testimony on direct examination during Pinto's deposition:

> Q.  You had, in caring for Joanne, what bank accounts did you have access to?
>
> A.  I had access to the Chase account for a short period of time. I had access to the Wells Fargo account for a short period of time, and I had access to the rent [sic] payee account at Citibank[8] for a short period of time that Joanne and I set up.
>
> Q.  What was the money in those accounts used for?
>
> A.  The money in the Chase account was used for Joanne's expenses. The money in the Wells Fargo account was used for Joanne's expenses at times, and at other times the money was withdrawn from there to safeguard against Bernard as per Joanne.
>
> Q.  Can you explain that a little bit more?
>
> A.  The first contact with Joanne in Colorado, Joanne felt like Bernard was attempting to rob her of her inheritance and he didn't want her to have anything.

---

[8] Pinto's testimony regarding the SSA representative payee account he set up for Joanne contradicts Plaintiffs' conclusory assertions that Pinto never followed SSA regulations related to receipt of Joanne's SSDI funds. See e.g. Opp at 16, 21.   This is another instance where Plaintiffs level unwarranted allegations at Pinto after choosing not to further develop related facts during deposition.

> And not knowing Bernard, not knowing whether to completely believe Joanne, when Joanne was hospitalized at some point I get the, at some point I get the Wells Fargo card, and I'm instructed to withdraw the money before Bernard gets a chance to steal it. And at that point --

Q. Before you go any further, who were you instructed by?

A. Joanne.

Q. To withdraw what money?

A. The Wells Fargo money.

Q. What did you do with it?

A. It was to purchase a lock box. The fund were put in the lockbox, funds that weren't used by Joanne or funds that were used by me for Joanne were safeguarded in a lockbox.

Q. You put it in a lockbox because Joanne instructed you to?

A. Right.

Q. When did she instruct you to put the money into the lockbox?

A. When?

Q. Yes.

A. I'm speculating, but it had to be during one of the hospitalizations. I don't know if I had it, I don't remember if I had it when she was at Meadow View. I believe I had it when she got to South Beach, I believe I got it then.

Pinto Dep. at 261:20-263:25 (attached as Ex. M to Bernard Decl.).  Incredibly, Plaintiffs now question if the "'safe location' ever existed."  Opp. at 15.

Plaintiffs' counsel never followed up on this testimony during deposition to inquire into all the concerns they now raise in opposition to summary judgment.  Plaintiffs cannot now argue that their failure to develop evidence during discovery is grounds to cross-examine witnesses at trial.  Conn. Indem. Co.,186 F. Supp. 2d at 276; see also, Leon, 988 F.2d at 311 (citing Gray v.

Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991) ("A 'mere hope' on [plaintiff's] part that 'further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [summary judgment].'")).

Plaintiffs' baseless assertion that Joanne lacks personal knowledge should be a red-flag to this Court, and their failure to depose Joanne exposes the frivolous nature of this entire lawsuit. The Court should be highly concerned that the Plaintiffs, who are suing as trustees on behalf of the trust that Joanne is the principal beneficiary of, chose not to depose Joanne or otherwise communicate with her to determine if any of their allegations are true.

The Court should also take notice of Plaintiffs' efforts to refashion their claims in their opposition.  Plaintiffs' pleadings repeatedly assert that Pinto "stole money" from Joanne.  See e.g. Compl. ¶¶16, 18, 32 36, 58, 110, 112, 163-64, 443, 605.  However, in light of their inability to refute Defendants' evidence that Pinto did not steal any funds, Plaintiffs now assert that Pinto performed "unauthorized" and "concealed" withdrawals of Joanne's funds. Opp. at 1, 3, 15, 17, 24, 25.  Plaintiffs no longer claim Pinto "stole" from Joanne, but now claim that he "committed massive fraud against the Black family." Id. at 25.  Plaintiffs' new focus on Pinto's alleged lack of authorization is essentially an admission that they cannot prove that Pinto retained (or "stole") any of Joanne's money.

In any case, Plaintiffs' arguments lack merit. First, Pinto's withdrawals were authorized by Joanne (Joanne Decl. at ¶¶11-14), and Plaintiffs admit that "Joanne had no duty to document her spending". Opp. at 16.

Second, even assuming Pinto's withdrawals were unauthorized, Pinto's mere lack of authorization does not render Plaintiffs' claims meritorious.  Plaintiffs' claims for fraud by omission (Second cause of action) and fraudulent misrepresentation (Third cause of action) must

be dismissed because they are premised on Pinto's alleged retention of the funds constituting double billing (Compl. ¶605-11, 614, 619-22), and Plaintiffs' claims for unjust enrichment (Fifth cause of action) and money had and received (Seventh and Eighth cause of action) still fail because Plaintiffs cannot establish that Pinto received money or was otherwise enriched. Georgia Malone, 19 N.Y.3d at 516; Goldfine, 73 A.D.3d at 854.

Plaintiffs also cannot show that Bernard justifiably relied on Pinto's lack of withdrawal disclosures because Bernard had access to her Chase and Wells Fargo accounts.  Grumman Allied Indus. v. Rohr Indus., 748 F.2d 729, 737 (2d Cir. 1984) ("The principle that access bars claims of reliance on misrepresentations has been expressly recognized by this Court.").   In addition to access, Bernard admitted that he periodically "audit[ed]" Joanne's Chase account to review all withdrawals. Mancilla Decl., Ex. B at 3 (email from Bernard dated May 20, 2015 stating: "I could periodically 'audit' the withdrawals by comparing the withdrawals [Pinto] reported to those that were actually made, and deduce any excess withdrawals (made but not reported) from what I owed him. I did this on several occasions.").

Similarly, with respect to the Wells Fargo account, Bernard could access that account at any time but only chose to do so towards the end of 2014. Bernard Decl. at ¶¶ 31, 84.  In light of the fact that Bernard is a self-described "financial expert," (Fantone Decl., Ex. A at 1) who had access to Joanne's bank accounts, no reasonable jury could conclude he justifiably relied on Pinto's disclosure on the invoices of withdrawals.  Schlaifer Nance & Co., 119 F.3d at 98 ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." ) (citing Grumman Allied Indus., 748 F.2d at 737)).

Accordingly, Defendants are entitled to summary judgment with respect to all of Plaintiffs' claims based upon Pinto's bank account withdrawals, including the SSDI benefits (Plaintiffs' Second, Third, Fifth, Seventh, and Eighth causes of action).

**III.**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT ON ALL CLAIMS RELATED TO THE SO-CALLED "ADVANCE PAYMENT" FOR OCTOBER 2014**
**(Plaintiffs' Ninth and Twelfth Causes of Action)**

Plaintiffs claim that Bernard paid Pinto $8,000 for services in September 2014, and thereafter unilaterally reduced Pinto's rate and requested return of $4,000. Pls' Resp. SOF at ¶¶52-54.  Pinto's refusal to return the $4,000 forms the basis of Plaintiffs' Ninth and Twelfth causes of action for money had and received and conversion. Compl. ¶¶662, 683-86.

There are no material issues of fact pertaining to these causes of action because (i) Plaintiffs' failed to cite admissible evidence to establish that Pinto retroactively agreed to reduce his rate for September 2014 after being paid $8,000 (Pls' Resp. SOF ¶¶52-55); and (ii) even if Pinto had an agreement with Bernard to retroactively reduce his rate for September 2014 (see Pls' Resp. SOF at ¶55), the existence of such agreement bars Plaintiffs' causes of action for conversion and money had and received.

Pinto's deposition testimony states that he never agreed to a $4,000 per month flat rate for September 2014.  Pinto Dep. at 130:7-19 (annexed as Ex. M to Bernard's Decl.).  The only evidence Plaintiffs cite to rebut Pinto's deposition testimony is a September 2, 2014 email correspondence from Bernard to Pinto, which states: "For September and going forward, please reduce your billing to half of the prior level ($4k/per month)," and to which Pinto responds "Got it. Call you later".  Fantone Decl. Ex. O at 1-2.  "Got it. Call you later" does not evidence the mutual assent required to form a contractual agreement.  Starke v. Squaretrade Inc., 913 F.3d

24

279, 288-89 (2d Cir. 2019) ("It is a basic tenet of contract law that, in order to be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual assent." The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. (internal citations omitted) (citing Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp., 93 N.Y.2d 584, 589 (N.Y. 1999)).

Thus, Plaintiffs cannot establish that Pinto retained funds that he was not entitled to, rendering their claims for money had and received and conversion legally insufficient. Goldfine, 73 A.D.3d at 854; JHAC LLC v. Advance Entertainment, LLC, 2020 N.Y. Misc. LEXIS 2597 *2 (Sup. Ct. N.Y. Co. June 5, 2020).

But even if such language did form an agreement as Plaintiffs contend, the existence of an express agreement bars their claims for money had and received and conversion. See e.g. Panix Promotions, Ltd., 2002 U.S. Dist. LEXIS 7176 SDNY 2002 at *9 (dismissing money had and received claim because there was an oral contract covering the subject matter involved."); Kaikov, No. 19-cv-2521 (LDH) (RER), 2020 U.S. Dist. LEXIS 186409, at *38 (E.D.N.Y. Oct. 5, 2020) ("an action for conversion cannot lie where damages are merely sought for breach of contract.") (citations and quotations omitted); In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) (holding that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain); Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc., No. 2:17-cv-1642 (ADS)(SIL), 2017 U.S. Dist. LEXIS 167207, at *23 (E.D.N.Y. Oct. 7, 2017) (dismissing the conversion claim because "[a]t its core, the conversion claim is grounded on a breach of contract claim for a failure to pay money resulting from the Agreement's commitments.").

In an attempt to avoid the inevitable dismissal of their claims, Plaintiffs now, for the first time at summary judgment, improperly assert a different theory to support their claim for money

25

had and money received -- that Bernard was fraudulently induced into paying Pinto.  Opp. at 26.

However, courts "do not consider claims or completely new theories of liability asserted for the

first time in opposition to summary judgment." <u>Casseus v. Verizon N.Y., Inc.</u>, 722 F. Supp. 2d

326, 344 (E.D.N.Y. 2010); <u>see also</u>, <u>Heletsi v. Lufthansa German Airlines, Inc.</u>, No. 99-cv-4793,

2001 U.S. Dist. LEXIS 22413, at •2 n.1 (E.D.N.Y. Dec. 18, 2001) (Johnson, Jr., J.) ("[a] party

cannot amend their complaint simply by alleging new facts and theories in their memoranda

opposing summary judgment").

For these reasons, Defendants are entitled to summary judgment on Plaintiffs' Ninth and

Twelfth causes of action.

## IV.

## <u>DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS RELATED TO WRIGLEY'S PAYMENTS TO PINTO IN JULY AND SEPTEMBER 2014</u>
### (Plaintiffs' Fourth and Tenth Causes of Action)

The facts related to this cause of action are undisputed.  In July and September 2014

Wrigley paid Pinto certain sums for services he performed, and Wrigley later sought

reimbursement for those payments to Pinto from Bernard, which Bernard denied.  <u>See</u> SOF at

¶¶89-90.  Thus, it is undisputed that Plaintiffs' never paid Pinto or Wrigley the sums they are

now requesting.  <u>Id</u>.  Accordingly, Plaintiffs' cannot establish that Pinto was enriched at

Plaintiffs' expense, or that Pinto obtained money belonging to Plaintiffs.  Thus, Plaintiffs' causes

of action for unjust enrichment and money had and received must fail.  <u>Georgia Malone & Co.</u>,

19 N.Y.3d at 516; <u>Goldfine</u>, 73 A.D.3d at 854.

## V.

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' FIFTEENTH CAUSE OF ACTION: AIDING AND ABETTING AGAINST WRIGLEY

Since none of the above causes of action survive summary judgment, Plaintiffs' aiding and abetting claim against Wrigley necessarily fails since there exists no underlying tort. Bigio v. Coca-Cola Co., 675 F.3d 163, 172 (2d Cir. 2012).

Assuming any claims survive, Plaintiffs do not cite to evidence sufficient to establish a claim for aiding and abetting against Wrigley.  Plaintiffs argue that they have "clearly alleged – and presented extensive evidence – that Wrigley actually knew about Pinto's misconduct and acted deliberately to advance his goals." Opp. at 31 (citing Bernard Decl. ¶¶ 20, 32-34, 47-54, 77-78).

Plaintiff's assertion that they have "clearly alleged" aiding and abetting against Wrigley is insufficient at summary judgment since the "[n]onmoving party may not rest upon mere allegations [....]" Good v. Presbyterian Hosp., 934 F. Supp. 107, 1996 U.S. Dist. LEXIS 11256 (S.D.N.Y. 1996).

As far as Plaintiffs' alleged "extensive evidence," Plaintiffs cite paragraphs 20, 32-34, 47-54, 77-78 in Bernard's declaration, which are either irrelevant, conclusory, or simply do not constitute evidence. Plaintiffs do not cite to any evidence that Wrigley received and reviewed Pinto's invoices after July 17, 2013 when Bernard instructed Pinto "you should make all future billing agreements with me, and only me." Pls' Resp. SOF at ¶40.   Accordingly, it cannot be inferred that Wrigley had knowledge of Pinto's representations in invoices after that date, thereby eliminating any basis for aiding and abetting against Wrigley as it relates to Pinto's alleged fraudulent invoices and billing (Plaintiffs' First, Third, Fourth, Sixth, and Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth causes of action).

Plaintiffs' aiding and abetting claim as it relates to undisclosed bank withdrawals (Plaintiffs' Second, Third, and Seventh causes of action) fails for the same reason, as it requires evidence that Wrigley had knowledge that Pinto was not reporting those withdrawals on his invoices. Plaintiffs cannot even show that Wrigley had knowledge of such withdrawals, let alone that he was not reporting them. Bernard admitted during his deposition that he is not aware of anyone (aside from himself) who had such access to Joanne's Chase and Wells Fargo accounts. September 4, 2019 Bernard Dep. at 14:5-13[9] and 13:21-14:2[10] (annexed hereto as Ex. C to Mancilla Decl.); see also Wrigley RFA at Req. Nos 16-18 (Attached as Ex. O to Bernard Decl.).

Even assuming Wrigley was somehow aware of all of Pinto's withdrawals, since Plaintiffs do not cite any evidence after July 17, 2013 to establish that Wrigley received and reviewed Pinto's invoices where those withdrawals were reported, she would have no way of knowing whether Pinto disclosed all those withdrawals.

Plaintiffs' only remaining claim for aiding and abetting against Wrigley relates to Pinto's purported theft of Joanne's SSDI benefits (Plaintiffs' Fifth and Eighth causes of action), which requires evidence that Wrigley was aware that Pinto was taking such benefits for himself. Plaintiffs do not identify any evidence that Wrigley was aware of this. Nor do they cite evidence that Wrigley was aware after July 17, 2013 that Pinto was not reporting those funds on his invoices to Bernard.

---

[9] "Q. [...] Did anyone but you have access to the Chase account bank statements for Joanne Black? A. I already said that I don't know whether Esaun had access or not and I testified that I did have access. Am I affirmatively aware that someone else did have access no, I am not affirmatively aware."

[10] When asked who had access to the chase bank statements for Joanne's account, Bernard testified: "and for the Wells Fargo accounts I did not have access and I would assume that Joanne if she had internet access in the hospital, which I do not know, would also have had access to her own bank statements." Id.

Summary judgement is also appropriate because Plaintiffs cannot point to any evidence that Wrigley "substantial[y] assist[ed] to advance the [underlying tort's] commission." Bigio, 675 F.3d at 172. Plaintiffs general assertions that Wrigley "vouched" for Pinto and told Bernard she trusted Pinto is insufficiently vague to support an inference that she substantially assisted the specific torts of which Plaintiffs complain.

Moreover, Bernard's assertions in his declaration are inadmissible, conclusory, and reveal tortured interpretations of the evidence. For example, his claim that "Wrigley participated in the Colorado conservatorship proceedings and knew that [Bernard] was specifically authorized by the Denver Probate Court to become Joanne's representative payee for her SSDI benefits" (Bernard Decl. at ¶32) is (a) improper because he cannot testify as to what Wrigley knew, and (b) irrelevant since Bernard's authorization does not render Pinto unauthorized to be her representative payee.[11]

Bernard's assertion that "Wrigley concealed from me Pinto's actions in becoming Joanne's representative payee" should not be afforded any weight because it is conclusory and it does not contain any specific details as to how she concealed this fact. Wyler, 725 F.2d at 160 ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.").

Same goes for his assertion that "Wrigley falsely assured me that Joanne's Wells Fargo account was safe and that Pinto had the debit card for this account." Bernard Decl. at ¶33. Contrary to Bernard's representation, when Bernard inquired about the debit card for Joanne's

---

[11] Notably, Wrigley testified to this point at her deposition, stating: "I was told, when she was in the hospital, that there was a point where they found out that -- when Joanne's Social Security was going into a checking account, that they needed to have the direct payee changed. And they decided that it should be Esaun. The psychiatrist and social worker and the team in the hospital decided that. And I had no idea, you know, that there was anything wrong with that." Wrigley Dep. 124:7-15. Despite its irrelevance, Plaintiffs do not cite to any evidence that Pinto was not authorized to become her representative payee.

Wells Fargo account, Wrigley wrote Bernard an email stating "Esaun should have Joanne's Wells Fargo card. That is the bank acct. where the check is auto deposited into. The first couple of months I think she used some money for calls...but Esaun talks to her about that." (Ex. K to Bernard's Decl.).

Accordingly, the record does not support Bernard's conclusory allegations, rendering them insufficient to defeat Defendant's showing that summary judgment is appropriate. See Leon, 988 F.2d at 311 (allegations by plaintiff insufficient to defeat defendants' summary judgment motion [...] where "allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants . . . ").

Finally, the Court should not give any weight to Bernard's statement at paragraph 20 that "Wrigley told me that she was in constant contact with Pinto, usually daily and was monitoring his activities, his visits to Joanne in the hospital, and her progress" because it is conclusory and insufficiently detailed to give rise to any inferences upon which a jury could infer that Wrigley was aware of Pinto's specific alleged conduct. Wyler, 725 F.2d at 160.

For these same reasons, Wrigley cannot be vicariously liable for any of Pinto's alleged wrongdoings as she was not privy to Esaun's representations concerning his scope of work and did not supervise him.  Plaintiffs concede as much in their opposition papers, asserting "Bernard, as a conservator and trustee for Joanne's SNT, paid Pinto, instructed Pinto on what to do, received Pinto's reports, and coordinated Joanne's care with Pinto." Opp. at 30.

## CONCLUSION

For the reasons articulated above, Defendants respectfully request the Court grant their motion for summary judgment, and for any other or further relief the Court deems just and proper.

Dated: New York, New York
      February 22, 2021

Respectfully submitted,

**Mancilla & Fantone, LLP**

By:   */s/ Robert M. Fantone*
      Robert M. Fantone

By:   */s/ Andrew Mancilla*
      Andrew Mancilla
      *Attorneys for Defendants*