# Exhibit B

# Bernard Black

| | |
|---|---|
| **From:** | Bernard Black |
| **Sent:** | Wednesday, May 20, 2015 10:30 PM |
| **To:** | Pamela Kerr |
| **Cc:** | d.zen@q.com; Lisa Diponio; Carl Glatstein; Bernie Poskus; Patrick Thiessen |
| **Subject:** | RE: Wells Fargo withdrawals |

Replies below

Bernie

*************************************************************
Bernard S. Black
Chabraja Professor, Northwestern University
Law School and Kellogg School of Management
375 East Chicago Ave., Chicago IL 60611
bblack@northwestern.edu
tel:  law:  312-503-2784; Kellogg 847-491-5049; cell: 847-807-9599
papers on SSRN at:  http://ssrn.com/author=16042
*************************************************************

---

**From:** Pamela Kerr [mailto:pam@kerrfa.com]
**Sent:** Friday, May 15, 2015 9:10 PM
**To:** Bernard Black
**Cc:** d.zen@q.com; Lisa Diponio; Carl Glatstein; Anthony J. Dain (Anthony.Dain@procopio.com)
**Subject:** RE: Wells Fargo withdrawals

Bernard,

Maybe I'm not seeing something, but my records show that there was a bank account already set up entitled Supplemental Needs ITF the Benefit of Joanne Black at Chase (Account #2425) as early as December 2012 (copy attached).

> This was an old account, with minimal assets, around $500.  Chase advised me that this was a business trust account, and that I needed to close it and create a new "personal trust" account.  I did so, but that account was opened only in late May 2012.  The principal reason for delay:  I spent several months trying very hard to get Anthony Dain to sign account opening forms.

1

PLAINTIFF054908

As you are saying below (and the bank records show it) you transferred money ($56,180) out of the Estate into Account #5372, which is not an SNT account.  It's my understanding that the Will clearly says the funds for Joanne should go into the SNT out of the Estate.

Why didn't you transfer these funds ($56,180) out of the Estate into the SNT checking account and pay Cherie and Esaun the $227,082 that you paid them out of the SNT.  I thought the whole purpose of the SNT was to shield Joanne's funds.

> I chose to pay amounts on behalf of Joanne directly from the Estate, rather than moving funds first from the Estate to the SNT, and then pay amounts from the SNT.  Joanne's funds would be protected either way; they were either Estate assets or SNT assets, but not my personal assets.  I had what I thought were good reasons for that choice, but I am not sure that those reasons are part of your investigation.  They will be a subject for testimony at a future hearing.

 This is also part of the question I had about the taxes.  Because the SNT earned income but had no distributions to Joanne, it paid $13k in taxes.  Between the transfers to the Non-SNT account #5372, to Cherie and to or by Esaun the total was $283,262.  Is it correct that these funds have now become non-protected since they didn't go through the SNT?

> I do not understand this question.  For amounts that were *spent* by paying them to third parties, the question of "protection" is moot once they are spent.

> Amounts transferred to x5372 were transferred on behalf of Joanne, to an account under Joanne's control [she chose to allow Esaun Pinto to use her debit card].

So that I don't have to spend Joanne's funds doing so, can you please send me your schedules where you "...because I could periodically "audit" the withdrawals by comparing the withdrawals he reported to those that were actually made, and deduce any excess withdrawals (made but not reported) form what I owed him.  I did this on several occasions.  These "audits" would be very helpful.  I have also made it through all of the emails from you and the only invoices I have from Esaun were dated May 12, 2015 even though they are from 2013 and 2014.  What did you use to pay Esaun?  Could you please forward those along with any receipts he provided to you to substantiate the payments to him.

> I believe that I replied separately on this question.  Esuan Pinto's invoices redate automatically.

Thank you!!

### *Pam*

Pamela M. Kerr, CPA, FCPA, CFE

*Kerr Forensic Accounting PC*

650 S. Cherry Street  Suite 235

2

PLAINTIFF054909


Denver, Colorado  80246

(303) 696-3700 - phone
(303) 696-5711 - fax
www.kerrfa.com

*"Kindness is the language which the deaf can hear and the blind can see" - Mark Twain*

**Privileged/Confidential Information and IRS Disclosure:**  This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. To ensure compliance with requirements imposed by the IRS (IRS Circular 230), we inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter addressed herein (or in any such attachment). In addition, the information contained in this message may be protected by the accountant-client privilege. Please immediately reply to the sender of this e-mail if you have received it in error, then delete it. In addition, you are hereby notified that any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

**From:** Bernard Black [mailto:bblack@kellogg.northwestern.edu]
**Sent:** Friday, May 15, 2015 5:32 AM
**To:** Pamela Kerr
**Cc:** d.zen@q.com; Lisa Diponio; Carl Glatstein; Anthony J. Dain (Anthony.Dain@procopio.com); Ira Salzman
**Subject:** RE: Wells Fargo withdrawals

This reply concerns Chase debit account x5372.  I replied separately with regard to the Wells Fargo account.

1. Joanne obtained cash, from 2012 until her hospitalization in June 2013, through weekly transfers to a debit account at Chase, for which she held the debit card.  This practice was begun by my mother, and I continued it.
2. In early 2013, for reasons best known to Chase, my effort to "link" Joanne's "old" debit card account at Chase to my accounts at Chase caused Chase to close her account.  In order to get money to her, I needed to open a new account, which would operate in substance in the same way as the old account.  This new account was x5372.
3. I authorized Joanne as a co-owner of this account, and sent her the debit card and initial pin.  She did not go to Chase to become a co-owner, so this account remaind in my name, but I treated it as Joanne's account, and Joanne's money.
4. The only possible account from which I could have transferred money to the Joanne account at the time was the Estate account x6179.  The Supplemental Needs Trust had not yet been funded; it was funded in July 2013 with money from Vanguard.  The Joanne Black 2013 Trust had not yet been funded. It was funded later with workers compensation money.
5. It could have been possible to stop transfers from the Estate, and replace them with transfers from the SNT or the 2013 Trust, once these Trusts were funded.  But there was no urgency to doing so.  The Estate had ample funds, and so I continued the weekly transfers from the Estate account to Joanne's account, and treated them as part of Joanne's 2/3rds share of the overall estate assets.

PLAINTIFF054910

6. Once Joanne was hospitalized in June 2013, the Chase debit card was in the possession of Esaun Pinto. This is not in dispute. You will observe from his bills that he regularly reported withdrawals from the Chase account, as an offset to what I otherwise owed him.
7. Esaun reported dishonestly – he reported only some of the actual withdrawals. This annoyed me, but was not a disaster, because I could periodically "audit" the withdrawals by comparing the withdrawals he reported to those that were actually made, and deduce any excess withdrawals (made but not reported) form what I owed him. I did this on several occasions.
8. I knew Esaun was making withdrawals from Joanne's *Chase* account. I did not know that he also had Joanne's *Wells Fargo* card and was making unauthorized withdrawals from Wells Fargo.

I will be happy to walk you through my understand of these account by phone.

Bernie Black
*************************************************************
Bernard S. Black
bblack@northwestern.edu
Chabraja Professor, Northwestern University
Law School and Kellogg School of Management
Law School:  375 East Chicago Ave., Chicago IL 60611
Kellogg:  2001 Sheridan Road, Evanston IL 60208
tel:  law:  312-503-2784; Kellogg 847-491-5049; cell:  847-807-9599
papers on SSRN at:  http://ssrn.com/author=16042
*************************************************************

---

**From:** Pamela Kerr [mailto:pam@kerrfa.com]
**Sent:** Monday, May 11, 2015 4:42 PM
**To:** Bernard Black
**Cc:** d.zen@q.com; Lisa Diponio; Carl Glatstein; Anthony J. Dain (Anthony.Dain@procopio.com); Ira Salzman
**Subject:** RE: Wells Fargo withdrawals
**Importance:** High

Bernard,

What was the purpose of you preparing this schedule? It appears that this is activity in Account #7482. Based on my forensic accounting done to date, the total ATM withdrawals out of this account were $15,138.88 and it appears that the majority of the ATM withdrawals out of this account were done by Joanne when she was "on the road."

**Here is my question about the ATM withdrawals that you claim were made by Esaun that you did not know about out of Account #5372.** (I'm attaching a print out of the accounting reconstruction that I have prepared for this account)

4

PLAINTIFF054911