| | |
|---|---|
| ☐ District Court  ☒ Denver Probate Court<br>Denver County, Colorado<br>Court Address:<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: September 24, 2014<br>CASE NUMBER: 2012PR1772 |
| In the Interest of:<br><br>**JOANNE BLACK**<br><br>**Respondent** | ▲   **COURT USE ONLY**   ▲ |
| Court Visitor:<br>Linda Lee Babcock<br>Post Office Box 217<br>Elizabeth, Colorado 80107<br><br>Phone Number: 720 261 8896<br>E-mail:  LindaLeeBabcock17@gmail.com<br>FAX Number: **NONE**             Atty. Reg. #. **NONE** | Case Number:  12 PR 1772<br><br><br><br><br>Division        Courtroom |

**VISITOR'S REPORT**
☒ **GUARDIANSHIP**  ☐ **CONSERVATORSHIP**  ☐ **COMBINED**

**Instruction to court visitor:  Please complete every applicable section of this form.  If a section is not applicable, please enter N/A.**

  I, Linda Lee Babcock, submit the following report concerning the investigation that I conducted as the court-appointed visitor in this ☒ guardianship pursuant to §15-14-305, C.R.S.  ☐ conservatorship pursuant to §15-14-406, C.R.S.

**Summary:**

|  |  | Yes | No |
|---|---|---|---|
| **A.** | A **lawyer** should be appointed to represent the respondent. | ☐ | ☐ |
| | Reason: ☐ The respondent requested a lawyer. | | |
| | ☒ Other:  The respondent already has a court appointed attorney-Lisa DiPonio. | | |
| **B.** | A **guardian ad litem** should be appointed to represent the respondent's best interests. | ☐ | ☒ |
| | Reason:  The respondent already has a GAL appointed, Gayle Young. | | |
| **C.** | A **professional evaluator** should be appointed to examine the respondent and prepare an evaluation. | ☐ | ☒ |
| | Reason: ☐ The respondent has demanded an evaluation. | | |
| | ☒ Other: The respondent has been in a psychiatric facility for the last 16 months and has been fully evaluated. | | |
| **D.** | I believe the proposed guardianship, including the type of guardianship, is appropriate and that less restrictive means of intervention are unavailable. Suggested limitations on guardian's powers and duties:  **NONE** | ☒ | ☐ |
| **E.** | The nominated guardian should be appointed for the respondent. | ☐ | ☒ |
| **F.** | I believe the proposed conservatorship, including the type of conservatorship, is appropriate and that less restrictive means of intervention are unavailable. Suggested limitations on conservator's powers and duties, and assets over which the conservator should be granted authority:  **N/A** | ☐ | ☐ |
| **G.** | The nominated conservator should be appointed for the respondent.  **N/A** | ☐ | ☐ |

**H.** Significant concern(s):

\*\*This court visitor's significant concern is that there is a lot of family discord and disagreement between Mr. Black and Mrs. Wrigley and Mr. Dain. There are many accusations, allegations and finger pointing between all of the family members and it is difficult to get beyond the "he said/she said". How this influences the respondent and her mental health status is not clear but the respondent appears to get caught up in the family turmoil and gets information from family members that appears to "fuel" her suspicions against Mr. Black. This court visitor is unable to distinguish between what is speculation and what is the truth. Regardless of who is appointed as the respondent's guardian, it is believed by this court visitor that there is going to continue to be acrimony and hard feelings between all involved parties. It is believed that this does not help the respondent especially in light of her mental illness and potential discharge.

\*\*This court visitor is **not** recommending the petitioner as her guardian. The respondent is on her medications currently and is lucid and articulate. She is able to state clearly that she does not want Mr. Black to be her guardian and feels that Mr. Black could be potentially punitive towards her. Her fears are enhanced by what she hears from other family members and she becomes very anxious about her discharge from the psychiatric facility and where she will reside after discharge. The respondent's two cousins, Cherie Wrigley and Anthony Dain appear to genuinely care for the respondent but the family discord and accusations around money matters must affect the respondent. It is this court visitor's opinion that a 3rd party-non family member **professional private guardian** be appointed to be the respondent's guardian. It is also believed that a local professional guardian (in New York state) be appointed as this would be beneficial in having face to face contact with the respondent (to build trust, etc.) and to be aware of what post discharge resources would be available and would be the best fit for the respondent. The respondent appears to have the resources to cover the cost of a **private guardian** and the respondent will hopefully not be as exposed to the family dynamics as she is currently. Decisions about living arrangements and other important decisions could be made by a neutral 3rd party who would not benefit from any arrangement that would be chosen for the respondent and that would be in her best interests.

## I. Observations:

**A.** The activities of daily living (daily functions) that the respondent can manage without assistance; could manage with the assistance of supportive services or benefits, including the use of appropriate technological assistance; and cannot manage are as follows:

Due to the respondent being out of state, she cannot be observed as far as hygiene, gait, etc.

**B.** The financial functions that the respondent can or cannot effectively manage:

The court visitor is unable to determine this over the phone.

## II. Interview of Respondent:  \*\*\*\*\*NOTE: This court visitor has only had phone contact since she is located out of state.

I interviewed the respondent, **on the PHONE**, on 21 September 2014 at South Beach Psychiatric Center. I provided the Notice of Rights to Respondent (JDF 797) and, to the extent the respondent was able to understand, explained the rights contained therein.

**A.** Other persons present at the interview:

The first phone call-no one else was present. The second phone call-Her cousin, Cherie Wrigley was present in the room. The third call-no one else was present. All of these calls were took place on 09/21/2014.

**B.** Respondent's physical appearance:

The interview with the respondent was done over the phone as she is in a psychiatric hospital in New York State. This court visitor had 3 phone call conversations with the respondent on 09/21/2014. This court visitor has had her case back in 2012 when Ms. Black was not on her medications and was flagrantly delusional and very paranoid. Face to face contact was not able to be made in 2012 (she refused) but there were phone conversations that illustrated her then current mental state. The respondent said that she does not remember having any contact with this writer when she was here in Colorado in 2012.

The respondent was alert and oriented. She came across today as pleasant, articulate and well spoken about what she wants and what she needs. Ms. Black made it very clear that she did not want her brother, Bernard Black, to be her guardian. She expressed suspicions about him- wanting to take her money, her jewelry, clothes, etc. and at this juncture, it did not seem to sound paranoid. She had unpleasant things to say about Mr. Black and his visit that just occurred recently at the psychiatric hospital. On the second call, Ms. Wrigley called and then handed the phone to Joanne. The conversation continued about not wanting Mr. Black as her guardian and allegations about her money being stolen, etc.

On the third phone call, when this court visitor was going over the typical questions on the court visitor report, she sounded increasingly suspicious and on the verge of being paranoid. She refused to give this court visitor the name of her doctor currently and said she would **NOT** give permission for her doctor to speak to this writer or to the court. The respondent said, "I am counting on my doctor to release me from here and I don't want you or the court to know anything more than is necessary."  The explanation was given again about what this court visitor's role is and the respondent still would not allow any additional information to be shared with this writer by her treating physician. "I did not know you were going to speak to her."

According to the respondent, she plans on NOT returning to Colorado after discharge and that her plan is to stay on her psychotropic medications.

**C.**   Respondent was oriented to time and place   ☒Yes ☐No

**D.**   After I explained the substance of the petition, the nature, purpose, and effect of the proceeding, and the general powers and duties of a guardian, conservator, or both, as appropriate to this case, I asked the following questions and the respondent answered as follows:

**1.**   Do you understand what I've explained to you?   ☒Yes ☐No ☐Did not respond
If **No,** please explain or comment

**2.**   Do you understand the statement of rights (JDF 797)?   ☒Yes ☐No ☐Did not respond

**3.**   Do you have a lawyer?   ☐Yes ☐No ☐Did not respond
If **Yes**, please provide name***"**I don't know."**  Her attorney is Lisa DiPonio.**

**4.**   Do you want a lawyer to be appointed for you?   ☐Yes ☐No ☐Did not respond
If **Yes**, please explain: ***"I don't know."

**5.**   Do you have a doctor?   ☐Yes ☐No ☐Did not respond
If **Yes**, please provide name:***"I will not give you her name."

**6.**   Is your doctor the same doctor who provided the letter attached to the petition filed in these proceedings?   **N/A**   ☐Yes ☐No ☐Did not respond

**7.**   Who are the family members or other people who are the most helpful to you?
"Cherie Wrigley; Anthony Dain and my friend, Esaun Pinto."

## Guardianship Only

**1.** Do you need any help with your daily living activities or daily functions?   ☐ Yes ☒ No ☐ Did not respond
If **Yes**, in what areas? _____

**2.** Do you know the proposed guardian?   ☒ Yes ☐ No ☐ Did not respond
Proposed guardian is <u>my brother/Bernard Black.</u>

**3.** Do you think that he or she should be appointed as your guardian?
☐ Yes ☒ No ☐ Did not respond

**4.** How do you feel about the proposed guardianship? (Scope, powers, duties and duration.)
☐ **Did not respond**
☒ **Responded as follows: "I don't want him to be my guardian or my friend-anyone else but not him. What he wants for me is bad and what I want for me is good. He has taken my social security check from me while I have been in the hospital. He is a stranger to me. I have struggled with my medical health all of my life and I have been fighting for organic health food; exercise; etc for a healthier life. He provides rationalizations for why I cannot have things…even my clothes. He told me that I have to come to his house in order for me to get my clothes. There has not been any relationship between us and he has never given me any money. He considers me to be his property.  The court needs to know if I die, my brother and his children will be the beneficiaries."**

## Conservatorship Only-N/A

**1.** Do you need any help with your finances?   ☐ Yes ☐ No ☐ Did not respond
Identify specific areas (check writing, bill paying, etc.)

**2.** Do you know the proposed conservator?   ☐ Yes ☐ No ☐ Did not respond
Proposed conservator is _____ .

**3.** Do you think that he or she should be appointed as your conservator?   ☐ Yes ☐ No ☐ Did not respond

**4.** How do you feel about the proposed conservatorship? (Scope, powers, duties and duration.)
☐ **Did not respond**
☐ **Responded as follows:** _____

## III.   Interview of Person Nominated as Guardian:

**A.**   Date and place of interview:
<u>By phone on 09/21/2014.</u>

**B.**   Person seeking appointment was asked and responded as follows:

**1.**   Name and address:
<u>Bernard Black, 2829 Sheridan Place, Evanston, Illinois 60201</u>

**2.**   Relationship (including non-family) to respondent:

<u>"Brother."</u>

Occupation: <u>"Professor at Northwestern University."</u>

3.  Why was this petition initiated?

<u>"For two reasons: I. There might be some advantage to having full guardianship as Joanne approaches release from the mental hospital-I would have some power to ensure she takes her meds-I could withhold her funds if she does not comply. Cousins Mrs. Wrigley and Mr. Dain are attempting to take control of guardianship and conservatorship by seeking guardianship in New York and taking it out of Colorado.  2. If Joanne ever gets to the point of having a health care proxy, she will have one."</u>

4.  Where has the respondent resided during the last three months?

<u>"South Beach Psychiatric Center."</u>

    **a.**  Who, if anyone, has been caring for the respondent during this period?

    <u>"The hospital has."</u>

    **b.**  What type of care has been provided?
- ☐ None
- ☐ In-home care
- ☐ Assisted living
- ☒ Hospital or nursing home-South Beach Psychiatric Center for last 16 months.

    **c.**  What type of care will be provided if you are appointed as guardian?
- ☐ None       **\*\*\*COURT VISITOR NOTE: Mr. Black said, "As Joanne's health allows, we will go in steps. I will find a place that is a good half way house and if she succeeds at that, I will work towards an independent living arrangement in her own apartment and have her attend a day program."**
- ☐ In-home care
- ☐ Assisted living
- ☐ Hospital or nursing home

5.  What changes in residence are contemplated?
- ☐ None  **\*\*\*COURT VISITOR NOTE:  Please see the answer above.**
- ☐ Private home  ☐ Other facility.  Please provide name and address:

    _____

6.  What are your qualifications to be guardian for respondent?  <u>"I am her brother, am the closest living relative, and her financial conservator. I am a genuine expert in finance and it is my duty to my mother and my sister."</u>

## IV.    Interview of Person Nominated as Conservator: N/A

    **A.**    Date and place of interview:

        _____

    **B.**    Person seeking appointment was asked and responded as follows:

        **1.**  Name and address:

   _____

**2.**   Relationship (including non-family) to respondent:

   _____

**3.**   Occupation:  _____

**4.**   Why was this petition initiated?

   _____

**5.**   Where has the respondent resided during the last three months?

   _____

**6.**   Who, if anyone, has been handling the respondent's financial affairs during this period?

   _____

**7.**   Does the respondent owe you (conservator nominee) any money or property? ☐ **Yes** ☐ **No**
If **Yes,** please explain. _____

**8.**   Do you (conservator nominee) owe the respondent any money or property? ☐ **Yes** ☐ **No**
If **Yes,** please explain. _____

**9.**   What are your qualifications to be conservator for respondent? _____

## V.   Interview of Petitioner, if Different than the Nominated Guardian or Conservator: N/A

**A.**   Name of person: _____

**B.**   Date and place of interview:_____

**C.**   Petitioner was asked and responded as follows:

   **1.**   Occupation: _____

   **2.**   Have there been any significant changes since you filed the petition? ☐ Yes ☐ No

   Comments: _____

## VI.   Interview of Other Interested Persons:

**D.**   Name of person:  Esaun Pinto  Relationship to respondent:   Was the private investigator and now is her friend/confidant.

**E.**   Date and place of interview:
By phone on 09/22/2014

**F.**   Other person asked and responded as follows:

   **1.**   Address:  50 W. 17th Street, New York, New York 10011

   **2.**   Occupation:  "Private Investigator."

   **3.**   Should a guardian or conservator be appointed? ☒ Yes ☐ No

Comments: "I think it is a horrible idea to have Mr. Black become her guardian. We met with him last Thursday and it was a disaster. Everything about him was cruel-his answers were short and his demeanor was cool. Joanne was really nervous and her anxiety level was through the roof. She took what he said as a threat. She requested certain things like her clothes and he refused. He would not compromise and he did have show any optimism about her recovery and her ability to stay out of the hospital. He was difficult and cold. He really pushes her buttons and does not look out for her best interests. As far as a recommendation for a guardian, I would say Cherie. Joanne has requested that Cherie and I be co- guardians for her. I told her that I did not know enough about guardianship, etc to agree to this. I think that her guardian should be a relative.  She is lucid but there still may be some delusions there.

***COURT VISITOR'S NOTE: Mr. Pinto presents very well over the phone. He did admit that he is paid to spend time with Joanne and to visit with her but not "every the time". His charge is $100/per hour. Mr. Pinto related that currently he is not being paid and intimated that it was due to the conflict about money amongst the relatives.

**Note:**     This section should be completed as many times as there are interested persons interviewed.  Attach the additional interview notes to this report.

**VII.     Report on Condition of Respondent's Current Residence: ***Court visitor's note: This court visitor was unable to do this as the respondent is residing in a psychiatric facility in another state.**

**A.**     Date visited:  _      /      /

**B.**     Address: _____

**C.**     Type of dwelling:  _____

**D.**     Condition:

1.   Lawn and landscaping:_____

2.   Exterior:_____

     a.   Interior:_____

     b.   Utilities working ☐ **Yes** ☐ **No** Additional comments_____

     c.   Clean          ☐ **Yes** ☐ **No** Additional comments_____

     d.   Fire hazards   ☐ **Yes** ☐ **No** Additional comments_____

     e.   Other (explain)_____

**E.**     I believe the respondent's current dwelling meets his or her needs.      ☐ **Yes** ☐ **No**

**F.**

**VII.** **Report on Condition of Respondent's Proposed Residence, if a change is contemplated:  \*\*\*\*Court Visitor's note: This has not been definitively determined at the writing of this court report.**

**A.** Date visited:         /         /

**B.** Address:  _____

**C.** Type of dwelling:_____

**D.** Condition:

    **1.** Lawn and landscaping:_____

    **2.** Exterior:_____

    **3.** Interior:_____

        **a.** Utilities working ☐ **Yes** ☐ **No** Additional comments_____

        **b.** Clean ☐ **Yes** ☐ **No** Additional comments_____

        **c.** Fire hazards ☐ **Yes** ☐ **No** Additional comments_____

        **d.** Other (explain) _____

**E.** I believe the respondent's proposed dwelling meets his or her needs.   ☐ **Yes** ☐ **No**

**F.**

**VIII.** **Physicians or Other Persons Who Are Known to Have Treated, Advised, or Assessed the Respondent's Relevant Physical or Mental Condition:**

Please identify the sources of the information: _____

**A.** Physicians and psychiatrists: Dr.Noshin Chowdhury/South Beach Psychiatric Center

Comments:  "Mr. Black came into her case only recently when there was talk about discharge. Ms. Wrigley supplied a good psychiatric history and Mr. Pinto has been there for every aspect of her care consistently. I would need more information before I can make a solid confirmation (either for or against) about guardianship by Mr. Black. I disagree with Mr. Black's recommendation of level of care after her release from the hospital. He is suggesting a half way house but that is not enough. Joanne is going to need a more supervised setting where her medications are monitored.  There has been some discussion of misappropriation of her funds by Mr. Black." \*\*\***Court visitor's note**: This writer asked about a potential discharge date and Dr. Chowdhury indicated that there is not a discharge date at this time.

**B.** Psychologists and psychotherapists:_____

Comments:_____

**C.** Nurses and nurse aids:_____

Comments:_____

**D.** Other compensated health care providers:_____

Comments:_____

**E.** Family members, relatives, and friends:  Samuel Black/nephew:

Comments:  "My general opinion is at this moment-he is the best person available to be her guardian." (He is talking about Bernard Black)

F.     Others: **Cherie Wrigley/cousin**

Comments: "She has been in the mental hospital for 16 months. Bernie has never had an interest in her and he has not been close to her. He did not see her once when she was in and out of the hospitals. His mother did not want him to be Joanne's guardian. The doctors have deemed her competent to be able pick her own guardian. He has threatened, in writing, to withhold money if she does not comply with his demands. He has threatened me if I don't listen to him. He does not consider her first. In their mother's will and special needs trust, her mother indicated that she wanted happiness for Joanne. I have paid for Joanne's dental needs and he refuses to pay me back. She needed the dental care and I paid out of my own pocket (between five and six thousand dollars). He is keeping it (the legal proceedings) in Colorado as it is easier for him."

***Note:** The dental care was provided for Joanne in July/August 2014. Mrs. Wrigley also indicated that she will be filing in New York for guardianship and possibly co-guardianship with Anthony Dain in regards to Joanne. She indicated also that she has already consulted an attorney. She also related that Mr. Black has "threatened" her if she does file in New York for guardianship. Mrs. Wrigley thinks that since Joanne had only been in Colorado for about 10 months (Joanne reportedly was a lifelong resident of New York) and that Joanne considers New York to be her home. Due to this, Mrs. Wrigley thinks that the guardianship should be under the New York State's jurisdiction. Recently Mr. Black has visited Joanne at the psychiatric hospital and Mrs. Wrigley reported: "Joanne has been increasingly agitated and upset since his visit. This is an example of how toxic he is to her."

**Anthony Dain/cousin-**

Comments: "It would be the worst possible thing for Joanne to have Bernie as her guardian. Bernie does not have a relationship with Joanne…He just saw her for the first time since he applied for guardianship. He does not know her. He is cold, distant, mean and calculating. He has never been close to understand her mental illness. His interest is to minimize the costs in order to preserve her assets. He is trying to force her where to live and to minimize the amount for her care and well being. Whatever money is left over goes to his children. I am sorry that I made him co- trustee. When she takes her meds, she is lucid and competent. Her mother said she wanted Joanne to live on her own and get assistance, if needed, that was her mother's wish. Cherie has been there for her for the last 40 years and she was the one who tracked her to Colorado and brought her back to New York. She is the one who went the extra mile."

**I represent that there is no conflict of interest between any party and me.**

Date:  09/23/2014                                          /s/Linda Lee Babcock, M.A.
                                                                  Signature of Court Visitor